Bellacosa, J.
(dissenting). The Freedom of Information Law (FOIL) (Public Officers Law § 84 et seq.) and this Court’s implementing and interpretive precedents (see, e.g., Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp., 87 NY2d 410; Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 *280 NY2d 562; Matter of Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d 75) combine to produce an unintended and anomalous set of results in these cases (see, New York State Bankers Assn. v Albright, 38 NY2d 430, 438; Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669, 675).
. The net practical result is a super-discovery tool affecting criminal proceedings by overarching application of FOIL. This overshadows this Court’s many specific precedents governing disclosure in criminal proceedings and the specific, calibrated remedies of the CPL (art 240) (see, e.g., People v Mobil Oil Corp., 48 NY2d 192, 200 [general statutory provisions apply only where particularized statutory provisions do not]; McKinney’s Cons Laws of NY, Book 1, Statutes § 238). It also evokes serious concern that systemic overload and inordinate delays in police departments and courts will result. Occasional FOIL efforts are more likely now to be encouraged and pursued as standard operating practice. File-by-file FOIL reviews and evaluations in virtually every criminal case will be the standing orders of the day, with many personnel displaced from other direct-line duties to process and evaluate eligibility, compliance, confidentiality, privilege, safety, security, and redactions galore in connection with massive document turnovers. The validation of this new staple of discovery is not within FOIL’S purpose and contemplated effectuation, though the acronym forecasts an ironic set of consequences.
For these reasons and with the shared hope that legislative attention will be alerted promptly to restore, at least prospectively, a fair and sensible balance of proportionate rights in this discovery field, I respectfully dissent and vote to affirm.
The fundamental policy underlying FOIL is the "people’s right to know the process of governmental decision-making and to review the documents and statistics leading to determinations” made by government (Public Officers Law § 84 [emphasis added]). The focus of this fresh and open air reform is to provide the public with access to the same information used by public officials to arrive at official "determinations.” This statutory focus should be key in interpreting the inter-agency exemption contained in Public Officers Law § 87 (2) (g) as applied to these cases.
The petitioners here argue that criminal complaint follow-up reports (DBS’s) and the personal memo books of individual police officers are subject to and not exempt from FOIL because *281 they are "statistical or factual tabulations or data” {see, Public Officers Law § 87 [2] [g] [i]). This proffered interpretation fails to consider this subsection of the statute in its particular context and full import (New York State Bankers Assn. v Albright, 38 NY2d 430, 436-438, supra). Public Officers Law § 87 (2) (g) additionally subjects three other categories of inter-agency materials to disclosure: instructions to staff that affect the public, final agency policy or determinations, and external audits. Thus, this subsection focuses on subjecting to disclosure only those internal agency documents which pertain to official actions affecting the public generally. This limitation is further understood by reference to other subsections of the statute specifically exempting evidence compiled for law enforcement purposes in certain circumstances and where disclosure would risk life or safety {see, Public Officers Law § 87 [2] [e], KD.
The latter specifications are markedly different from those here. The contents of investigatory files which contain raw information gathered for the purposes of criminal investigation, and potentially prosecution, do not constitute the type of information upon which official determinations and actions are taken in the context framed and intended by FOIL. Raw evidence acquired by the police has not been "tabulated,” or processed, but simply recorded. As such, it has not been filtered or subjected to any analysis, verification or protective shielding by the relevant ágency under specific regulatory guidelines.
This Court, in effect, shifts the emphasis of FOIL so that it will functionally eclipse the nuanced procedural safeguards governing disclosure in criminal matters, as such. This is done with no evidence that the Legislature ever contemplated by language or history this significant joint availability.
Matter of Farbman & Sons v New York City Health & Hosps. Corp. (62 NY2d 75, supra) need not be applied so inexorably and extended in this fashion. In Farbman, this Court held that records which were subject to disclosure under FOIL could not be withheld merely because the requestor was a civil litigant against the agency, and rejected a blanket exemption from FOIL based on CPLR article 31 (id., at 78, 80-81). That holding relied on especially the fact that " 'the standing of one who seeks access to records under the Freedom of Information Law is as a member of the public, and neither enhanced * * * nor restricted * * * because he is also a litigant or potential litigant’ ” (id., at 82, quoting Matter of John P. v Whalen, 54 NY2d 89, 99 [citations omitted]).
*282 In these cases, the official respondents do not seek exemption from FOIL because the petitioners are defendants in criminal proceedings, but because of the interagency nature of the requested documents themselves (DOS’s and officers’ memo books). Interestingly and perhaps ironically, the rule of this case should entitle victims, and others, to disclosure of these same materials under a fair-game-for-all application of these enhanced FOIL principles. That may well multiply the administrative difficulty and, perhaps, even impossibility of compliance.
Substantial public policy considerations underlie the encouragement of and incentives for members of the community to be forthcoming with information serving the investigation of criminal activity and the apprehension and prosecution of criminals. Accurate and complete recordkeeping by officers is also important. Granting general access to raw observations, suppositions, notations and opinions, as in these cases, cannot well serve those overriding objectives in the criminal jurisprudence arena.
Thus, I vote to affirm in each case.
In Matter of Gould v New York City Police Dept. and Matter of DeFelice v New York City Police Dept.: Order reversed, with costs, and matter remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein.
Chief Judge Kaye and Judges Simons, Titone, Smith and Levine concur with Judge Ciparick; Judge Bellacosa dissents and votes to affirm in a separate opinion.
In Matter of Scott v New York City Police Dept.: Order modified, without costs, and matter remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
Chief Judge Kaye and Judges Simons, Titone, Smith and Levine concur with Judge Ciparick; Judge Bellacosa dissents in part and votes to affirm in a separate opinion.