■ In the Matter of SUNSET ENERGY FLEET, L. L. C., Appellant, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, Respondent. [728 NYS2d 279] —Spain, J. Appeals (1) from a judgment of the Supreme Court (Teresi, J.), entered September 7, 2000 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent denying petitioner an exemption from disclosure under the Freedom of Information Law, and (2) from an order of said court, entered December 15, 2000 in Albany County, which denied petitioner's motion for renewal.

In 1999, petitioner began the process of securing approval for the construction of a 520 megawatt electric generating facility in Brooklyn. As part of the approval process, petitioner was required to obtain, *inter alia*, a certificate of environmental compatibility and public need pursuant to Public Service Law article 10. As a major stationary source of regulated air pollutants, petitioner had to demonstrate, *inter alia*, that its proposed facility would comply with certain Federal and State air quality emission standards and that it would not significantly add to any adverse impacts from existing nearby pollution sources. As the proposed facility was expected to exceed acceptable emission limits for sulfur dioxide and particulate matter (hereinafter the pollutants), petitioner was required to conduct a cumulative air quality modeling analysis of these pollutants from facilities within roughly a 55-kilometer radius of its proposed site which purportedly emitted such materials. Accordingly, petitioner obtained from respondent and its counterparts in New Jersey and Connecticut, *inter alia*, a list of relevant facilities and screened them to determine those with significant emissions of the pollutants. Of 396 sources initially identified from the data obtained, approximately 16 were determined to emit significant amounts of the pollutants. Petitioner conducted modeling of these facilities and extensive verification of their emissions data to determine the cumulative impact of its proposed facility on the environment.

This work culminated in the production of Nearby Emission

Source Verification Worksheets (hereinafter the worksheets) on each of the subject sources, which were submitted to respondent in accordance with its requirements for a permit under Public Service Law article 10. The data initially obtained from respondent proved to be incomplete and/or outdated, necessitating more extensive research and updating by petitioner to perform its analyses. According to petitioner, it expended over 2,200 hours and approximately $225,000 between July 1999 and March 2000 researching, screening, analyzing and compiling the air emissions data obtained from respondent and its counterpart agencies before submitting the worksheets to respondent.

Upon submitting the worksheets, petitioner requested that they be exempt from disclosure under the Freedom of Information Law (Public Officers Law art 6) [hereinafter FOIL]) as "trade secrets" within the purview of Public Officers Law § 87 (2) (d) and 6 NYCRR 616.7 (c) (2) (v). Petitioner sought the exemption to prevent other prospective developers of electric generation facilities in the New York City area from obtaining its compiled verified emissions data which it argued would injure its competitive advantage in the permitting process. Respondent denied petitioner's request for a trade secret FOIL exemption.

Petitioner thereafter commenced this CPLR article 78 proceeding challenging respondent's determination. Supreme Court dismissed the petition finding, *inter alia*, that while petitioner had demonstrated the existence of actual competition for purposes of a FOIL exemption, it had not proven that the worksheets possessed commercial value to its competitors as necessary to establish the likelihood of substantial competitive injury if they were released. Petitioner later moved to renew its application on the basis that a competitor's request for the worksheets under FOIL filed two months after Supreme Court's decision proved their commercial value, which motion Supreme Court denied. On petitioner's appeal from both the judgment and the order, we affirm.

It is well settled that there is a presumption of discoverability under FOIL, subject to specific and narrowly construed exceptions to disclosure set forth in Public Officers Law § 87 (2) (*see, Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp.*, 87 NY2d 410, 417; *Matter of Lockheed Martin IMS Corp. v New York State Dept. of Family Assistance*, 256 AD2d 847, 848-849). In light of this presumption of discoverability, petitioner must establish "that the material falls 'squarely within the ambit of one of [the] statutory exemptions'" (*Matter*

*of Encore Coll. Bookstores v Auxiliary Serv. Corp., supra,* at 421, quoting *Matter of Fink v Lefkowitz,* 47 NY2d 567, 571). Here, petitioner relies on Public Officers Law § 87 (2) (d) which protects "records * * * that * * * are trade secrets or are * * * derived from information obtained from a commercial enterprise and which if disclosed would cause substantial injury to the competitive position of the subject enterprise."

Initially, we agree with respondent that the worksheets do not constitute trade secrets (*see,* Public Officers Law § 87 [2] [d]; 6 NYCRR 616.7 [c] [2] [v]). A trade secret is defined as "any formula, pattern, process * * * or compilation of information that is not published or divulged and which gives an advantage over competitors *who do not * * * have access to such data*" (6 NYCRR 616.7 [c] [2] [v] [emphasis supplied]).

Significantly, the compiled information in the worksheets for which petitioner seeks trade secret protection reflects publicly available data and the fact that petitioner had to compile, verify and analyze the data does not make the compiled information exempt. Notably, petitioner did not apply unique or proprietary methods to the data but, rather, utilized respondent's standard methodology in analyzing it. Moreover, petitioner's expenditure of resources to screen out and specify the emission source points to be included in its nearby source inventory did not produce information for the worksheets that is not readily reproducible by a third party by visiting the emission source points for the appropriate information and analyzing it using standard engineering methods.

Furthermore, while we find that the worksheets were compiled by a commercial enterprise, petitioner failed to demonstrate the likelihood of substantial competitive injury if the worksheets were disclosed (*see,* Public Officers Law § 87 [2] [d]; *Matter of Glens Falls Newspapers v Counties of Warren & Washington Indus. Dev. Agency,* 257 AD2d 948, 949). The question of whether substantial competitive harm is likely "turns on the commercial value of the requested information to competitors and the cost of acquiring it through other means" (*Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp.,* 87 NY2d 410, 420, *supra; see, Matter of Troy Sand & Gravel Co. v New York State Dept. of Transp.,* 277 AD2d 782, 784-785, *lv denied* 96 NY2d 708). Courts must also consider the "resultant damage to the submitting enterprise" (*Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp., supra,* at 420), petitioner herein, as well as the availability and cost of the requested material to the competitors (*see, id.,* at 420).

Supreme Court's conclusion that petitioner demonstrated

the existence of actual competition is not challenged on appeal and is supported in the record. Consequently, the sole issue is whether petitioner has shown the likelihood of substantial competitive injury (*see, id.,* at 419). The crux of petitioner's argument is that the data contained in the worksheets is of significant commercial value to other proposed competing facilities insofar as the facilities will gain—through this FOIL request—the unique advantages that petitioner has gained only through the expenditure of nearly $225,000 and eight months of effort. Petitioner now contends, as it did in its motion to renew, that a competitor's FOIL request for its worksheets is prima facie evidence that the worksheets have a commercial value to its competitors and that the commercial value is equivalent to the cost and time required to produce the worksheets.

We find, however, that every such facility has regulatory costs attached to its operation and petitioner's costs to assemble required regulatory information does not create an exemption. Here, petitioner has not demonstrated that the cost of compiling this data was considerable *relative to the cost of this project* and, thus, the presumption that the worksheets would provide a windfall to its competitors is speculative (*see, id.,* at 420; *see also, Worthington Compressors v Costle,* 662 F2d 45, 51). Specifically, petitioner has not established that other proposed electric generation facilities will be similarly required to conduct a cumulative air quality modeling analysis or that these worksheets would be advantageous to another facility at a different location or even a nearby location. Petitioner has failed, despite its extensive expenditure of money and effort, to demonstrate the commercial value of the information in its worksheets to its competitors. Moreover, petitioner failed to demonstrate how disclosure would decrease *its* ability to secure the proper permits. Accordingly, Supreme Court properly concluded that the worksheets were not entitled to an exemption under FOIL.

We have considered petitioner's remaining contentions and find them to be unpersuasive.

Cardona, P. J., Mercure, Crew III and Carpinello, JJ., concur. Ordered that the judgment and order are affirmed, without costs.