OPINION OF THE COURT
Walter B. Tolub, J.
This CPLR article 78 application raises the question of whether information concerning competitive bidding policies are exempted from disclosure under the New York Freedom of Information Law (FOIL) because the information sought constitutes confidential proprietary or trade information (Public Officers Law § 87 [2] [d]).
By this application, made both pursuant to CPLR article 78 and section 89 (5) (d) of the Public Officers Law, petitioner New York Racing Association (NYRA) moves for an order vacating the portion of the March 9, 2007 determination of the State of New York Racing and Wagering Board’s (NYSRWB) Records Access Appeals Officer Robert A. Feuerstein, which upheld the determination of NYSRWB Secretary Gail Pronti issued on February 15, 2007 denying petitioner’s application to except certain documents from FOIL disclosure under Public Officers Law § 87 (2) (d).
Background
Petitioner, the New York Racing Association is a private stock corporation incorporated and existing under the laws of the State of New York. NYRA is subject to regulation by respondent, State of New York Racing and Wagering Board, a regulatory body within the executive department of the State of New York organized under section 101 of the Racing, Pari-Mutuel Wagering and Breeding Law.
Organized as a nonprofit horse racing organization pursuant to section 202 of the Racing, Pari-Mutuel Wagering and Breeding Law, NYRA, pursuant to a New York State franchise, conducts year-round Thoroughbred horse racing and wagering operations at Aqueduct Racetrack, Belmont Park Racetrack, and Saratoga Race Course.[1] In addition to its racing and wagering operations, NYRA sells the simulcasts (live audio-visual signals) it produces of its races to other racing and gaming entities in connection with pari-mutuel wagering thereon and is *381 also engaged in the simulcasting of horse races from areas throughout the United States and the placement of pari-mutuel wagers on those races.
Presently, NYRA is competing against other commercial enterprises to obtain the renewal of its longtime New York State racing franchise. NYRA is also currently a debtor in bankruptcy in an action before the US District Court for the Southern District of New York, and has recently proposed the confirmation of its plan of reorganization.[2]
This application arises in connection with the January 2007 FOIL request made by nonparty Paul Post, a reporter for the Saratogian newspaper. Mr. Post’s request sought information concerning confidential bidding correspondence between NYRA and the NYSRWB concerning 10 proposed changes[3] to NYRA’s NYSRWB-approved “above-$250,000 competitive bidding policy.” NYRA was obligated to provide NYSRWB with this confidential correspondence under the Racing, Pari-Mutuel Wagering and Breeding Law, and did so accompanied by a request for exemption from FOIL disclosure due to the nature of the documents and the information contained therein.
On February 15, 2007, NYRA was informed by Gail Pronti, NYSRWB’s Secretary and Records Access Officer, that notwithstanding NYRA’s objections, the information contained within the FOIL request was not excepted from disclosure. In pertinent part, Ms. Pronti’s letter reads:
“I do not agree that you have met the burden that they [the documents] be exempted pursuant to the Freedom of Information Law § 87 (2) (d). The first six (6) items were approved by the Board as amendments to the required bidding process and as such should be publicly available. Since the last four (4) items were not approved and are not in effect they would appear to be of no value to competitors” (petition, exhibit 3).
NYRA, through its counsel, appealed the February 15 determination, arguing that the material sought in Mr. Post’s FOIL request was exempted from disclosure because it was comprised entirely of proprietary trade secret information, the release of which could be detrimental to petitioner’s business operations *382 (petition, exhibit 5). By letter dated March 9, 2007, respondent Robert A. Feuerstein, NYSRWB’s Counsel and Records Access Appeals Officer issued a determination upholding the release of correspondence pertaining to the six changes which were later adopted by NYSRWB, and denying the release of those materials pertaining to the remaining four changes. In pertinent part, Mr. Feuerstein’s letter reads:
“The only record deemed to be responsive to the application for access is the four (4) page summary chart prepared by Board staff. It is a chart, which sets forth the existing text of the relevant procedure, the proposed new text, and NYRA’s justification for the proposed change. Three pages concern the six items that the Board approved as amendments and thus state these new procedures. The final page concerns the four proposals that were not approved by the board. The record is derived from writings submitted by NYRA, which were accompanied by the request that the records and information therein be excepted from disclosure pursuant to Public Officers Law (‘POL’) § 87 (2) (d). . . .
“Upon review, I find that NYRA has not met the burden of proof concerning the six proposed changes that were approved by the Board and are now formally part of the bidding procedures. In my opinion, there is nothing contained in this text or the justification presented that would create a likelihood of substantial injury to NYRA’s competitive position if disclosed. A review of the text appears to support the proposition that some of this information is disclosed to potential bidders as part of the RFP process, and thus is known in the industry. Other changes are ministerial changes to rather elementary provisions. The arguments presented are general in nature and fail to demonstrate that the limited information to be made available will result in the likelihood of substantial injury to NYRA’s competitive position. The cases cited in support of NYRA’s argument are not dispositive in that these involve generally contracts in effect or specific financial details.
“In contrast to the finding about the six proposed and eventually approved changes, I find that NYRA has met the burden of proof concerning the four proposed changes that were not approved by the *383 Board. These are not part of the approved bidding procedures. Disclosure of the suggestions and limited rationale for these may inure to NYRA’s competitive disadvantage by revealing the manner in which NYRA views bids submitted under procedures it desires to clarify or replace.” (Petition, exhibit 5.)
This application followed.
Discussion
Judicial review of agency determinations traditionally limits the court’s scope of analysis to whether the challenged determination was rationally based, or whether it was made in violation of lawful procedure, was affected by an error of law, was arbitrary and capricious or an abuse of discretion (CPLR 7803; Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]; Chinese Staff & Workers Assn. v City of New York, 68 NY2d 359, 363 [1986]; Flacke v Onondaga Landfill Sys., 69 NY2d 355 [1987]). Although not a vehicle for de novo review (see Greystone Mgt. Corp. v Conciliation & Appeals Bd. of City of N.Y., 94 AD2d 614, 616 [1st Dept 1983], affd 62 NY2d 763 [1984]), the court is under no obligation to uphold any decision which it deems “inconsistent with an agency’s own precedent [or] which ignores the existence of prior rulings or provides no basis for lack of adherence thereto” (Matter of Uniform Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v Cuevas, 276 AD2d 184, 187 [3d Dept 2000]).
Under the New York Freedom of Information Law (Public Officers Law § 84 et seq.), the general public is entitled to review of agency records unless the documents fall within one of the enumerated exemptions of the law. In particular, Public Officers Law § 87 (2) (d) permits the denial of access to agency records that constitute “trade secrets or are submitted to an agency by a commercial enterprise or derived from information obtained from a commercial enterprise and which if disclosed would cause substantial injury to the competitive position of the subject enterprise.”
The test in this state as to whether “substantial injury to the competitive position of the subject enterprise” would ensue from disclosure of commercial information under FOIL is derived from the Court of Appeals holding in Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at *384 Farmingdale (87 NY2d 410 [1995]). The Encore court, in adopting the test set forth in the Federal Freedom of Information Act (FOIA) noted:
“As established in Worthington Compressors v Costle (662 F2d 45, 51 [DC Cir]), whether ‘substantial competitive harm’ exists for purposes of FOIA’s exemption for commercial information turns on the commercial value of the requested information to competitors and the cost of acquiring it through other means. Because the submitting business can suffer competitive harm only if the desired material has commercial value to its competitors, courts must consider how valuable the information will be to the competing business, as well as the resultant damage to the submitting enterprise. Where FOIA disclosure is the sole means by which competitors can obtain the requested information, the inquiry ends here.
“Where, however, the material is available from other sources at little or no cost, its disclosure is unlikely to cause competitive damage to the submitting commercial enterprise. On the other hand, as explained in Worthington:
“ ‘Because competition in business turns on the relative costs and opportunities faced by members of the same industry, there is a potential windfall for competitors to whom valuable information is released under FOIA. If those competitors are charged only minimal FOIA retrieval costs for the information, rather than the considerable costs of private reproduction, they may be getting quite a bargain. Such bargains could easily have competitive consequences not contemplated as part of FOIA’s principal aim of promoting openness in government’ (id.).” (Encore, 87 NY2d at 420.)
Indeed the lower courts in this state have utilized the test set forth in Encore and have, on more than one occasion,[4] denied the release of certain NYRA records on the basis that the release of those records, all of which pertained to some form of NYRA’s business operations, would have likely resulted in substantial competitive injury. For example, in New York City Off Track Betting Corp. v New York State Racing & Wagering Bd. (Sup Ct, NY County, Aug. 2, 2000, index No. 101856/2000), Judge *385 Schlesinger determined that release of unredacted contracts between NYRA and two other racing-related entities would severely compromise NYRA’s ability to negotiate contracts for selling its simulcast signal. In New York Racing Assn., Inc. v State of N.Y. Racing & Wagering Bd. (Sup Ct, NY County, Jan. 7, 2005, index No. 126207/2002), Judge Schlesinger concluded that release of a NYSRWB-redacted NYRA “strategic plan” would result in NYSRWB’s overt disclosure of information which could be readily used by NYRA’s competitors to NYRA’s detriment. The same conclusion was arrived at with respect to the release of NYRA-related financial and investment information (id.). Similar findings were made by Judge Wetzel in New York Racing Assn., Inc. v State of N.Y. Racing & Wagering Bd. (Sup Ct, NY County, Jan. 25, 2007, index No. 117933/2005), New York Racing Assn., Inc. v State of N.Y. Racing & Wagering Bd. (Sup Ct, NY County, Jan. 25, 2007, index No. 100400/2006), New York Racing Assn., Inc. v State of N.Y. Racing & Wagering Bd. (Sup Ct, NY County, Jan. 25, 2007, index No. 101001/2006), New York Racing Assn., Inc. v State of N.Y. Racing & Wagering Bd. (Sup Ct, NY County, Jan. 25, 2007, index No. 101226/2006) and New York Racing Assn., Inc. v State of N.Y. Racing & Wagering Bd. (Sup Ct, NY County, Jan. 25, 2007, index No. 117719/ 2005).[5]
Applying the test set forth in Encore, accompanied by the rationales set forth by Judge Schlesinger and Judge Wetzel, it is this court’s conclusion that release of the document created by NYSRWB which purports to summarize the confidential communications between NYRA and NYSRWB during the amendment process of the “above-$250,000 competitive bidding policy” all constitute proprietary trade information. That information, even in NYSRWB’s summarized state,[6] is more than enough for a competitor to potentially glean a competitive advantage over NYRA which could significantly impinge NYRA’s ability to effectively continue its operations, renew its franchise and revive itself from the throes of bankruptcy. That the information is being sought by a newspaper reporter is of no import. The release of NYRA’s confidential communications with respect to the amendments sought, and eventually obtained, for the “above-$250,000 competitive bidding policy” *386 to the press, summarized or not, is tantamount to release of the information to all of NYRA’s competitors. As such, exemption from disclosure under Public Officers Law § 87 (2) (d) is warranted.
Accordingly, it is adjudged that petitioner’s application is granted; and it is further ordered that the March 9, 2007 determination made by the State of New York Racing and Wagering Board’s Records Access Appeals Officer, Robert A. Feuerstein, partially upholding the February 15, 2007 determination of the New York Racing and Wagering Board’s Secretary, Gail Pronti, which denied the exception of the aforementioned documents is hereby vacated inasmuch as the documents are exempt from FOIL disclosure pursuant to Public Officers Law § 87 (2) (d).

. NYRA owns all three of the aforementioned racing facilities.

. The court notes that, according to petitioner, the agent of a NYRA competitor unsuccessfully sought confirmation of the competitor’s own plan of reorganization (mem of law in support of application at 2).

. Six of the proposed modifications were later approved.

. Copies of the foregoing cases may be found annexed to petitioner’s memorandum of law.

. The court notes that all five applications before Judge Wetzel resulted in a single decision and focused on the dissemination of contracts.

. These documents were presented for in camera review and are not a formal part of the record.