Matter of Verizon N.Y. Inc. v New York State Pub. Serv. Commission (2025 NY Slip Op 03612)

Matter of Verizon N.Y. Inc. v New York State Pub. Serv. Commission

2025 NY Slip Op 03612

Decided on June 12, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 12, 2025

CV-24-0245
[*1]In the Matter of Verizon New York Inc. et al., Respondents,
v
New York State Public Service Commission et al., Appellants.

Calendar Date:April 29, 2025

Before:Egan Jr., J.P., Aarons, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

John J. Sipos, Public Service Commission, Albany (Daniel Becker of counsel), for appellants.
McGuireWoods LLP, New York City (Jeffrey J. Chapman of counsel), for respondents.

Egan Jr., J.P.
Appeal from a judgment of the Supreme Court (David Gandin, J.), entered January 30, 2024 in Albany County, which granted petitioners' application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent Public Service Commission partially denying petitioners' request for an exemption from disclosure under the Freedom of Information Law.
On July 9, 2023, an article appeared in The Wall Street Journal entitled "America is Wrapped in Miles of Toxic Lead Cables," describing how petitioners and other telecommunication companies owned thousands of miles of lead-sheathed copper wires throughout the country that had been installed decades earlier as part of the telephone network and were a "hidden source of [lead] contamination" posing health risks to the public. The article prompted respondent Department of Public Service and other state entities to investigate the scope of the problem in New York and, on July 20, 2023, the Chair of respondent Public Service Commission (hereinafter PSC) and other officials jointly requested that petitioners provide "a full inventory of lead-containing aerial and buried cable, both on land and below water, owned by [petitioners]," regardless of whether the cable was still in use or not, as well as the location thereof to allow inspection.[FN1] Petitioners provided the information to the PSC in August 2023, filing redacted versions of a spreadsheet that extensively detailed, among other things, the locations and amounts of cable known to be sheathed in lead (Exhibit A), as well as "a representative example of a record for a manhole that does not include latitude and longitude data . . . [which] allows engineers to understand the characteristics of each cable, including its lead status" (Exhibit B). Petitioners also provided an unredacted version to the PSC with an explanation as to how the redacted material contained trade secrets, confidential commercial information and/or critical infrastructure information that was exempt from disclosure under the Freedom of Information Law (see Public Officers Law art 6 [hereinafter FOIL]; see also 16 NYCRR 6-1.3 [b]).
Four days later, a Journal reporter submitted a FOIL request to the PSC seeking disclosure of the exhibits in unredacted form. Respondent Records Access Officer (hereinafter RAO) notified petitioners of the request, and they reiterated their view that the redacted material was exempt from disclosure pursuant to Public Officers Law § 87 (2) (d), (f) and (i). The RAO determined that the portions of Exhibit A detailing the locations of the cable, as well as the entirety of Exhibit B, contained critical infrastructure information and were exempt from disclosure (see Public Officers Law § 87 [2] [i]). The RAO ordered disclosure of the remainder of Exhibit A that detailed, among other things, the amount of lead-sheathed cable identified by petitioners and whether that cable was suspended in the air, underground, underwater or within buildings. Upon petitioners' [*2]administrative appeal, respondent Secretary of the PSC (hereinafter the Secretary) upheld the RAO's determination.
Petitioners responded by commencing the present CPLR article 78 proceeding and successfully seeking a temporary stay of disclosure. Petitioners argued that disclosure of Exhibit A with the limited redactions authorized by the RAO would still reveal "trade secrets" and cause "substantial injury to [their] competitive position" (Public Officers Law § 87 [2] [d]). Following joinder of issue, Supreme Court concluded that disclosure of the redacted information would still fall under the substantial competitive injury exemption to FOIL and granted the petition. Respondents appeal.
We affirm. "While there is a presumption of access accorded to documents held by a public agency that are used by it in the execution of its administrative responsibilities, that presumption is subject to certain narrowly defined exceptions" (Matter of City of Schenectady v O'Keeffe, 50 AD3d 1384, 1386 [3d Dept 2008], lv denied 11 NY3d 702 [2008] [citations omitted]; see Matter of New York Civ. Lib. Union v City of Rochester, ___ NY3d ___, ___, 2025 NY Slip Op 01010, *1 [2025]). The relevant exceptions here are in Public Officers Law § 87 (2) (d), which exempts from disclosure records that contain "trade secrets or are submitted to an agency by a commercial enterprise or derived from information obtained from a commercial enterprise and which if disclosed would cause substantial injury to the competitive position of the subject enterprise" (see Matter of Markowitz v Serio, 11 NY3d 43, 50 [2008]; Matter of Verizon N.Y., Inc. v New York State Pub. Serv. Commn., 137 AD3d 66, 68 [3d Dept 2016]). The language "create[s] two separate FOIL exemptions in the same statutory provision, one that exempts all records proven to be bona fide trade secrets, and another that requires a showing of substantial competitive injury in order to exempt from FOIL discovery all other types of confidential commercial information imparted to an agency" (Matter of Verizon N.Y., Inc. v New York State Pub. Serv. Commn., 137 AD3d at 69-70). It is incumbent upon petitioners, as the parties resisting disclosure, to "prove entitlement to one of the exceptions" (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 109 AD2d 92, 94 [3d Dept 1985], affd 67 NY2d 562 [1986]; see Public Officers Law § 89 [5] [e]; Matter of Prall v New York City Dept. of Corr., 129 AD3d 734, 735 [2d Dept 2015]).
Petitioners attempted to show that both exemptions in Public Officers Law § 87 (2) (d) applied, and Supreme Court determined that they succeeded with regard to the substantial competitive injury exemption. That exemption requires "[t]he party seeking to take advantage of [it to] demonstrate the existence of actual competition and the likelihood of substantial competitive injury" from disclosure (Matter of Glens Falls Newspapers v Counties of Warren & Washington Dev. Agency, 257 AD2d 948, 949 [3d Dept 1999]; [*3]see Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale, 87 NY2d 410, 421 [1995]). There is no dispute here that petitioners face actual competition in the telecommunications industry. The issue accordingly distills to whether petitioners demonstrated the existence of substantial competitive injury from disclosure of confidential information, which depends upon an assessment of " 'the commercial value of the requested information to competitors and the cost of acquiring it through other means' " (Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale, 87 NY2d at 420, quoting Worthington Compressors, Inc. v Costle, 662 F2d 45, 51 [DC Cir 1981]; see Seife v United States Food & Drug Admin., 43 F4th 231, 241-242 [2d Cir 2022]; Matter of Sunset Energy Fleet v New York State Dept. of Envtl. Conservation, 285 AD2d 865, 867 [3d Dept 2001]; see also 16 NYCRR 6-1.3 [b] [2]).[FN2]
Petitioners provided the PSC with a sworn declaration from the director of program and project management in their network engineering organization who detailed why the exemption applied. In particular, the director described how generating the inventory of lead-sheathed cables had required the work of multiple people over the course of two months who searched engineering databases that petitioners had "invested immense capital costs and incurred expenses in creating and maintaining" over the years and reviewed nondigitized records going back several decades. The director made clear that this information about "the nature and precise location of [petitioners'] outside plant" was "highly confidential" and was only available on a need-to-know basis within the corporate orbit, as well as how it would be impossible for competitors to generate it on their own from either publicly available information or from independent inspection. The director further explained how this information would be valuable to competitors because it revealed the previously unknown extent to which petitioners had lead-sheathed cables in their network, suggesting the capabilities of petitioners' network given its reliance on that cable as opposed to newer technologies and enabling competitors to tailor their own service offerings accordingly. It would further permit competitors to solicit business by suggesting, accurately or not, that the presence of lead-sheathed cables rendered petitioners' network deficient and potentially dangerous, and the director provided documents relating to a prior instance in which a competitor had engaged in precisely that type of conduct.
Notwithstanding respondents' efforts to argue otherwise, the foregoing proof reflected that information regarding the extent to which lead-sheathed cables were present in petitioners' network could not be acquired by competitors via other means and how its disclosure could foreseeably result in more than mere embarrassment and empower competitors to "affirmative[ly[*4]] use . . . proprietary information" in their own operations to harm petitioners (United Techs. Corp. v United States Dept. of Defense, 601 F3d 557, 564 [DC Cir 2010] [internal quotation marks omitted]; see Nadler v Federal Dep. Ins. Corp., 92 F3d 93, 96-97 [2d Cir 1996]; Matter of City of Schenectady v O'Keeffe, 50 AD3d at 1386-1387; Matter of Troy Sand & Gravel Co. v New York State Dept. of Transp., 277 AD2d 782, 785-786 [3d Dept 2000], lv denied 96 NY2d 708 [2001]; see also 16 NYCRR 6-1.3 [b] [2]). The confidential information, which detailed exactly how reliant petitioners' network was upon lead-sheathed copper cable, was in no way "substantially similar" to the generalized public acknowledgments from petitioners' officers that there were lead-sheathed cables present in their network that would be retired over time (Seife v United States Food & Drug Admin., 43 F4th at 243). "Consequently, Supreme Court properly concluded that public disclosure was unwarranted based upon Public Officers Law § 87 (2) (d)" (Matter of Glens Falls Newspapers v Counties of Warren & Washington Indus. Dev. Agency, 257 AD2d at 950 [citations omitted]).
In view of the foregoing, we need not consider whether the information at issue also constitutes a trade secret within the meaning of Public Officers Law § 87 (2) (d). To the extent that respondents' remaining arguments are not rendered academic by the foregoing, they have been considered and rejected.
Aarons, Reynolds Fitzgerald, Ceresia and Fisher, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: Although framed as a "request[ ]," the PSC was empowered to obtain this information via inspection and a review of petitioners' records even if petitioners did not want to provide it (see Public Service Law § 94).

Footnote 2: As Public Officers Law § 87 (2) (d) is modeled after a "virtually identical" provision in the federal Freedom of Information Act, it is appropriate to "look for guidance to [f]ederal cases interpreting" that provision in assessing the applicability of the FOIL exemption (Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale, 87 NY2d at 419-420; see 5 USC § 552 [b] [4]).