OPINION OF THE COURT
Alice Schlesinger, J.
The petitioner, Community Board 7 of the Borough of *771 Manhattan, is moving for a judgment pursuant to CPLR article 78. Specifically, it is asking for an order requiring the New York City Department of City Planning to disclose to it information requested under the Freedom of Information Law (Public Officers Law art 6), in a September 19, 1990 letter.
The requested information was denied by the respondent in a letter of September 27, 1990 and that denial was affirmed after an appeal to counsel for the Department in a letter of October 5, 1990.
The final paragraph of the October 5th letter advised the petitioner’s representatives who were acting in the name of petitioner that they could obtain judicial review of this denial in a proceeding under CPLR article 78.
The Community Board thereby acting upon this advice has brought this petition to vacate the October 5th denial and obtain the information previously sought.
Some background is necessary. Community Board 7 is located on the west side of Manhattan and encompasses the area of the proposed "Trump City” development project. The Board in 1988 created a Penn Yards Committee to focus on and review this project. John Kowel, Michael J. O’Connor, and Ethel Sheffer became its cochairpersons.
On September 19, 1990 these individuals wrote to the Department of City Planning on behalf of their committee asking, in connection with the proposed development, for material falling into three categories.
First, they asked for the current draft of the restrictive declaration being negotiated between the Department and the Trump organization.
Second, they asked for all prior drafts of this document which were disclosed to or negotiated with the Trump organization or anyone else outside the Department.
Third, they asked for correspondence to date with or from any person or organization relating to the above.
Their requests were designated Freedom of Information Law (FOIL) requests under the Public Officers Law.
The Department denied the request in its entirety explaining that the information sought was exempt from FOIL. This was so, explained Luis Falcon on behalf of the Department, because "If disclosed would impair present or imminent contract awards or collective bargaining negotiations and/or they are inter-agency or intra-agency materials which are not a) *772 Statistical or factual tabulations or data; b) instruction to staff that affect the public; and c) final agency policy or determination”.
The affirmation of the denial by William Valetta elaborated upon the reasons given earlier by Falcon. Mr. Valetta explained that the material requested was inter- or intra-agency information relating to predecisional matters and exempt from disclosure.
Additionally, Valetta suggested that section 87 (2) (c) of the Public Officers Law also applied as an exemption because the documents "if disclosed would impair present or imminent contract awards or collective bargaining negotiations”.
Before embarking on the instant litigation, the petitioner corresponded with the Executive Director of the New York State Committee on Open Government. In response to this letter, Robert J. Freeman, the Director, issued a nine-page advisory opinion on the propriety of disclosure of the information requested by petitioner.
Mr. Freeman had before him the request for information and the two denials issued by respondent. His discussion of the applicable law and his opinion as to whether the Board should be given access is detailed and persuasive.
He begins by stating that as a general matter the Freedom of Information Law is based upon a presumption of access or that material is available unless it falls into very specific enumerated exemptions outlined in Public Officers Law § 87 (2) (a) through (i).
He then discusses two of the grounds for denial relied upon by Mr. Valetta (Public Officers Law § 87 [2] [c], [g]) and explains why he believes they do not apply here.
Section 87 (2) (c) relates to withholding records whose release could impair contract awards. However, here this was not relevant because there is no bidding process involved where an edge could be unfairly given to one company. Neither is this a situation where the release of confidential information as to the value or appraisals of property could lead to the city receiving a less favorable price.
In other words, since the Trump organization is the only party involved in these negotiations, there is no inequality of knowledge between other entities doing business with the city.
As to section 87 (2) (g), Mr. Freeman believes this exception is also not relevant because the communication sought is not between officials within an agency of the city or among *773 officials of different agencies of the city. Therefore, this is not inter- or intra-agency material that is sought. Rather the information requested, for the main, is in the category of communications and negotiations between the city and outside parties.
To the extent that material exists which was prepared in conjunction with policy decisions or evaluations or recommendations within an agency, these may be exempt. However, the Director points out, no specific claim of such has been made here in the denials.
Petitioner then brought this action. In opposition, and perhaps because respondent, as did this court, found Freeman’s opinion convincing, the sole ground put forward via a cross motion to dismiss was that petitioner lacked authority under the New York City Charter to commence such a proceeding.
Specifically, counsel for respondent argues that each Community Board exists pursuant to New York City Charter § 2800. This section enumerates activities which Community Boards may pursue, but confers no powers on them. Their position is purely advisory and there is no authorization for such a body to sue.
In support of this argument, counsel cites cases for the principles that standing to sue must be explicitly stated in enabling legislation if it is to exist, and several opinions utilizing these principles in cases affecting Community Planning Boards.
In opposing respondent’s motion to dismiss, counsel for petitioner attempts to distinguish these cases. He argues that under the circumstances existing here, the Community Board has a limited right to litigate consistent with its lawful functions.
I believe petitioner makes the better argument.
Initially, it is significant to note that if the three chairpersons had brought this petition in their own names, rather than in the Community Board’s, respondent would be forced to respond on the merits. This is so because the Public Officers Law gives citizens the right to obtain nonexempt material under FOIL.
In fact, in a case cited by respondent, Community Planning Bd. No. 2 v Board of Stds. & Appeals (43 AD2d 670 [1st Dept 1973]), the court reinstated individual tenants as proper petitioners in an article 78 proceeding to review a variance granted by respondent Board of Standards and Appeals and *774 the Community Board was given leave to appear in the proceeding amicus curiae.
Further, the opinions denying various Community Boards’ standing to petition all concern matters where the Boards were suing other city agencies or entities for ultimate or complete relief.
In the dispute referred to earlier, Community Planning Bd. No. 2 (supra), the Board sought to upset a variance granted by the Board of Standards and Appeals which would allow changes in a neighborhood restaurant.
In Community Bd. No. 4 v Board of Estimate (88 AD2d 832 [1st Dept 1982]), the petitioner Board sought to annul a decision of the Board of Estimate made after public hearings which affirmed a grant of a zoning variance to a realtor regarding the conversion of all floors of a building.
In Matter of Community Bd. No. 9 (City of New York) (NYLJ, Nov. 28, 1990, at 25, col 3 [Sup Ct, Kings County]) the petitioner Board sought unsuccessfully to invalidate a resolution adopted by the New York City Board of Estimate authorizing the city to convey several buildings to a housing association for the purpose of rehabilitating them for low-income and homeless families.
In contrast, an article 78 proceeding was permitted to continue in Community Bd. 3 v State of New York (101 Misc 2d 189 [Sup Ct, Queens County 1979]), where the Board was seeking a preliminary injunction preventing preparation of a community residence for the mentally retarded until the Board had the opportunity to suggest alternative sites.
While it is true that in the above case, the respondent appears not to have raised the issue of standing, the opinion in favor of petitioner was based in part on the Board’s request for limited relief consistent with their duties, as opposed to challenging the respondent’s ultimate authority or jurisdiction.
Similarly, here the petitioner is asking for limited relief as well. The Board is not seeking to overturn a decision or recommendation of the Department of City Planning. Nor is it in any way questioning or challenging that Department’s authority to make such a recommendation.
Rather it is merely asking for what appears to be nonexempt material so as to be better prepared to consider the Department’s recommendation when it is finally presented to it.
*775 Obtaining such information is appropriate and is consistent with the specific functions the Board is given by the New York City Charter. Section 2800 (d) (17) of the New York City Charter, for example, directs Community Boards to initially review applications and proposals of public agencies and private entities for the use, development and improvement of land in its designated area. It also provides for the conduct of hearings and the preparation and submission of recommendations with regard to such land use.
Additionally, as petitioner’s counsel points out, the recently revised New York City Charter has even expanded the role of Community Boards relative to land use review.
I therefore find that under the specific circumstances existing here and the limited relief sought by petitioner, the Board does have the power to utilize this proceeding to obtain nonexempt material from petitioner as it is necessary to implement its duties and powers under the New York City Charter.
Therefore, respondent’s cross motion to dismiss is denied. The Board’s application is granted to the extent that the Department of City Planning’s determination of October 5, 1990 which denied access to the requested information is vacated and the Department is directed to turn over to petitioner the information requested under the first two items of its September 27, 1990 letter.
As to the third request, specifically correspondence with or from any person or organization, only material which is not interagency or intraagency and thereby exempt is directed to be supplied. As to the information which the Department alleges is exempt for this reason, a specific statement from Richard Schaffer, Director of the Department, to the effect that he has reviewed this material and that it falls within the exempt category of inter- or intra-office correspondence will suffice.
The material is to be supplied to the Board on or before March 4, 1991. This court is cognizant of the 30 days normally given to a public agency to turn over material pursuant to such an order. However, here respondent has been on notice of the request since September. Also and most important, both sides have informed me that a recommendation by the Department regarding the Trump plan will be issued and given to the Board by March 10, 1991. Therefore time is of the essence if petitioner is to make meaningful use of the information.