[645 NYS2d 145]

In the Matter of NEW YORK STATE ELECTRIC & GAS CORPORATION, Appellant, v NEW YORK STATE ENERGY PLANNING BOARD et al., Respondents.

Third Department, July 11, 1996

## APPEARANCES OF COUNSEL

*Huber, Lawrence & Abell,* New York City *(Michael Guararra* and *Nicholas A. Giannasca* of counsel), for appellant.

*Dennis C. Vacco, Attorney-General,* Albany *(Frank K. Walsh* and *Naney A. Spiegel* of counsel), for New York State Energy Planning Board, respondent.

*Read & Laniado, L. L. P.,* Albany *(David B. Johnson* and *Howard J. Read* of counsel), for Indeck Energy Services of Silver Springs, Inc., respondent.

## OPINION OF THE COURT

PETERS, J.

Pursuant to Energy Law article 6, respondent New York State Energy Planning Board (hereinafter the Board) is required to adopt an energy plan every four years (*see,* Energy Law § 6-102 [3] [a]; § 6-106 [1]). In furtherance thereof, the Board has adopted regulations which direct major energy suppliers, including investor-owned utilities and alternative power producers, to file certain information pertaining to forecasts of electricity demands, supply sources and other energy-related data on an annual basis (*see,* 9 NYCRR parts 7861-7863).

Respondent Indeck Energy Services of Silver Springs, Inc. is an alternative power producer which is subject to the Board's regulations and filing requirements. Its facility generates both electricity and steam. It sells the electricity to petitioner and it sells steam to its host, Morton Salt Division of Morton International, Inc.

On December 31, 1987, petitioner, an investor-owned electric and gas public utility, entered into a mandated power purchase agreement with Indeck. Pursuant to such agreement, petitioner is obligated to purchase all electricity generated at Indeck's facility until April 2006. So long as Indeck's facility operates at a certain efficiency level, it would be deemed a "qualifying facility" under the Public Utility Regulatory Policies Act of 1978 (Pub L 95-617) and thus be permitted to charge petitioner preferential rates.

Pursuant to 9 NYCRR part 7861, Indeck, when submitting its annual filing to the Board, requested that some of the infor-

mation supplied be accorded confidential treatment since the disclosure of such data "would cause substantial injury to [its] competitive position" (9 NYCRR 7843.2). Such information concerned its facility's average unit heat rate, net electric energy generated, nonelectric net thermal energy generated, fuel consumption and electricity generated by fuel type (hereinafter collectively referred to as efficiency data). Petitioner thereafter requested disclosure of the efficiency data contending that it was needed to determine whether Indeck remained a "qualifying facility", thus authorizing it to hold petitioner to the terms of the power purchase agreement. In support of the request, petitioner asserted that it was not in competition with Indeck and therefore "the release of such data would not give competitors any insight in knowing Indeck's production cost".

Indeck contended that not only had the Public Service Commission ruled that the monitoring of a "qualifying facility" was essentially a matter of contract law to be settled by the parties themselves, but also that the position now asserted by petitioner was inconsistent with its prior position before the Public Service Commission when it was resisting disclosure of its own production data. In continuing to assert that petitioner, as a competitor, would acquire an undue advantage by knowing a major portion of Indeck's operating costs if disclosed, Indeck further sought that such information be kept confidential in perpetuity since "the power plant heat rates do not change significantly over time".

In the initial decision dated October 19, 1994, the Board's records access officer denied petitioner's request for the information predominantly for the reasons stated by Indeck. Contending that it was not prepared to accord confidential protection to the information in perpetuity, it ruled that the "confidential protection of the operating data appears warranted, at least during the term of their power contract". The records access officer further contended that "[s]hould [petitioner] renew its request for disclosure of the operating data after the expiration of the contract, we will consider at that time whether confidential status should be continued".

Petitioner's administrative appeal resulted in the Board's counsel upholding the initial determination, which reasoned that petitioner's view of competition was "far too limited * * * in light of the industry-wide transition from a regulatory, monopolistic environment to a fully competitive one". It further concluded that there are more appropriate enforcement mechanisms for petitioner to monitor respondent's qualifying

status. Petitioner thereafter commenced a CPLR article 78 proceeding to annul the Board's determination which was dismissed by the Supreme Court. Petitioner appeals.

The administrative regulations which govern the planning process under the Freedom of Information Law (Public Officers Law art 6 [hereinafter FOIL]) utilize language nearly identical to that employed under the Public Officers Law when defining "confidential information" (*compare*, 9 NYCRR 7843.2, *with* Public Officers Law § 87 [2] [d]). Hence, we can glean from the principles underlying a request for confidentiality under FOIL that there is "a broad standard of disclosure upon the State and its agencies" (*Matter of Capital Newspapers Div. v Burns*, 67 NY2d 562, 565), with exemptions to be construed narrowly (*supra*, at 566). Thus, it remains clear that the burden is placed upon the Board to demonstrate why the requested material falls within the exemption to the administrative regulation (*see*, 9 NYCRR 7843.2; *see also*, *Matter of Legal Aid Socy. v New York State Dept. of Social Servs.*, 195 AD2d 150, 153). Upon our review, we conclude that the Board overwhelmingly met its burden.

Looking beyond the confines of the contract between petitioner and Indeck, the Board's counsel noted that due to the underpinnings of the 1994 State Energy Plan encouraging a competitive marketplace within the next five years in an effort "to allocate resources, select energy technologies and guide fuel choices at all sectors of the economy" (*see*, 1 New York State Energy Plan [Oct. 1994], at 3), "it is impossible to precisely predict at this point the myriad ways in which competition could play out in the near future". Since both of these parties are in the business of generating electricity, both the Board and the records access officer reasoned that their potential for competition with each other in the future appears evident. Moreover, it noted that these parties, although still under contract, have renegotiated the terms of their contract and will most probably do so in the future. Based upon such reasoning, we find Supreme Court to have properly deferred to the expertise of the Board since, in planning for New York's future energy needs, it has particular knowledge and expertise about the relationship between these utilities and how that relationship is likely to change over time.

We further find a rational basis to support the Board's determination that the release of the operational data would cause "substantial injury to the competitive position of the subject enterprise" (Public Officers Law § 87 [2] [d]). With the Board

noting that the data sought is not public information and that the disclosure of such data could result in competitors, like petitioner, inferring essential aspects of Indeck's production costs fundamental to projecting future costs, its conclusion that disclosure could cause competitive damage is sound (see, Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp., 87 NY2d 410, 420).

We agree with the Board that this analysis of competitive harm must include a consideration of the interests of Morton Salt as its steam host. As the Board appropriately reasoned, disclosure of the requested information would not only give steam host competitors an undue advantage in knowing a part of the steam host's production costs, it would also violate any confidentiality agreements Indeck entered into with Morton Salt. While this, by itself, would not constitute competitive harm as between Indeck and petitioner, it is eminently reasonable to conclude that Indeck would be unable to fairly compete for steam customers in the future if such customers could not be fully assured that their confidentiality agreements would remain inviolate.

We note that the Board did not determine that this information will be confidential for the term of this agreement only to be released thereafter, thus supporting petitioner's contention that there could be no finding of competitive harm if the information, relatively unchanged over time, will ultimately be disclosed. What the Board did conclude was that upon the expiration of the contract between these parties, petitioner can again apply for the release of this information. Should the same arguments be propounded as that made here, confidentiality may well be extended. Finally, we need not address petitioner's motivation to obtain the information since such motivation is irrelevant (see, Matter of Scott, Sardono & Pomeranz v Records Access Officer of City of Syracuse, 65 NY2d 294).

With such determination rationally based and fully supported by the record, we affirm the judgment of Supreme Court dismissing the petition (see, Matter of Pugliese v Hamburg, — AD2d —, 1996 NY Slip Op 00029 [1st Dept, Jan. 9, 1996]).

CARDONA, P. J., MERCURE, WHITE and CASEY, JJ., concur.

Ordered that the judgment is affirmed, without costs.