[719 NYS2d 354]

In the Matter of LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL No. 17, et al., Respondents, v NEW YORK STATE DEPARTMENT OF TRANSPORTATION, Appellant.

Third Department, January 18, 2001

APPEARANCES OF COUNSEL

*Eliot Spitzer, Attorney General,* Albany (*Frank K. Walsh* of counsel), for appellant.

*Meyer, Suozzi, English & Klein, P. C.,* Mineola (*Marty G. Glennon* of counsel), for respondents.

**OPINION OF THE COURT**

MERCURE, J.

Respondent is the owner of Stewart Airport in Orange County. On March 26, 1998, respondent and Cargex Newburgh Limited Partnership, the "construction arm of Federal Express" (hereinafter FedEx), entered into a ground lease (hereinafter the lease) for construction of an approximately 125,443-square-foot building with associated vehicle parking, truck docking and related improvements for use as a FedEx sorting and distribution facility at the airport. FedEx immediately gave public

notice of the nature and scope of its proposed construction project, sought bids from all subtrades and commenced work on the project.

Shortly after entering into the lease, respondent submitted the lease to the Comptroller and the Attorney General for final approval. On April 15, 1998, petitioner L. Todd Diorio, vice-president of petitioner Laborers' International Union of North America, Local No. 17 (hereinafter the Union), requested a copy of the lease from respondent pursuant to the Freedom of Information Law (Public Officers Law art 6 [hereinafter FOIL]). Reasoning that "the subject lease is not yet approved and disclosure would impair present or imminent contract awards or collective bargaining negotiations," respondent denied the request pursuant to Public Officers Law § 87 (2) (c). On administrative appeal, the Union consented to the redaction of the dollar amount of the lease and argued that, absent that information, the request would not fall within Public Officers Law § 87 (2) (c). On July 7, 1998, respondent's appeal unit reaffirmed the denial of access to the lease until such time as it was "fully executed," i.e., approved by the Comptroller.[1]

On September 17, 1998, petitioners commenced this CPLR article 78 proceeding seeking, as relevant to this appeal, judgment requiring respondent to disclose the lease. Respondent immediately provided petitioners with a copy of the executed lease, which had been approved by the Comptroller on July 10, 1998, and moved to dismiss the petition on the ground, among others, of mootness. Supreme Court denied that motion, directed respondent to serve an answer and ultimately rendered judgment in favor of petitioners to the extent of granting their request for production of the lease but permanently stayed enforcement because the lease had already been produced. Respondent appeals from both the order partially denying its motion to dismiss and Supreme Court's final judgment.[2]

■ We affirm. Initially, we agree with Supreme Court's conclusion that, although the branch of the proceeding seeking

---

1. By that time, the Attorney General's approval had already been obtained.

2. Because "no appeal lies as of right from an intermediate order entered in a proceeding pursuant to CPLR article 78 and, in any event, any right of direct appeal from an intermediate order terminates with the entry of judgment" (*Matter of Burstein v Board of Examiners of New York City Bd. of Educ.*, 187 AD2d 423, 424), our analysis will be limited to petitioners' appeal from the final judgment.

to compel production of the lease was rendered moot by respondent's production of the instrument immediately upon commencement of the proceeding, the circumstances presented in this case bring it within the exception to the mootness doctrine. In order for that doctrine to apply, the following three prongs must be satisfied: "(1) a likelihood of repetition, either between the parties or among other members of the public; (2) a phenomenon typically evading review; and (3) a showing of significant or important questions not previously passed on, i.e., substantial and novel issues" (*Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714-715; *see, Matter of Daily News v Teresi*, 275 AD2d 812, 814). Given respondent's concession concerning its "longstanding practice of * * * withhold[ing] draft leases from public access until such time as they have been approved by both the [Attorney General] and [the Comptroller]," it seems quite clear that there is a great likelihood of repetition of the issue presented in this case. Second, respondent's substantial control over the timing of the contract, the approvals and the ultimate production of the demanded material places it in a position to almost invariably render a proceeding moot, just as it did in this case. Third, although prior cases have prohibited State officials' shielding of leases and contracts that have not yet been formally approved (*see, Matter of Cross-Sound Ferry Servs. v Department of Transp.*, 219 AD2d 346, 349; *Community Bd. 7 v Schaffer*, 150 Misc 2d 770, 772-773, *affd* 183 AD2d 422, *revd on other grounds* 84 NY2d 148), none presented the issue in the particular context of the present case. We view the issue presented here as both novel and substantial and therefore conclude that all three of the *Hearst* factors have been satisfied.

■ On the merits, we first note that the intent underlying FOIL is that most public documents are "presumptively discoverable" (*Matter of Washington Post Co. v New York State Ins. Dept.*, 61 NY2d 557, 564). Thus, "[e]xemptions are to be narrowly construed to provide maximum access, and the agency seeking to prevent disclosure carries the burden of demonstrating that the requested material falls squarely within a FOIL exemption by articulating a particularized and specific justification for denying access" (*Matter of Capital Newspapers v Burns*, 67 NY2d 562, 566). Here, respondent asserts that the lease falls within the exception that permits public agencies to withhold records which, "if disclosed would impair present or imminent contract awards or collective bargaining negotiations" (Public Officers Law § 87 [2] [c]). On administrative appeal,

respondent's justification for denying access was that the "lease will not be a final, enforceable contract until it is approved by both the [Attorney General] and the [Comptroller]. * * * It is [respondent's] judgment that making a draft lease public before it is fully executed could jeopardize the bargaining position of [respondent] in any negotiations made necessary by the comments of [the Comptroller]." We are not persuaded.

In *Matter of Cross-Sound Ferry Servs. v Department of Transp.* (219 AD2d 346, *supra*), this Court considered whether Public Officers Law § 87 (2) (c) required a public agency to make available a request for proposals where a contract had been conditionally awarded prior to the appeal. This Court opined that "[o]nce the contract was awarded, the terms of [the successful bidder's response to the request for proposals] could no longer be competitively sensitive" (*id.*, at 349). In this case, the justification for shielding the contract between respondent and Cargex was even less compelling because, unlike the situation in *Cross-Sound Ferry*, there was no competitive bidding procedure and Cargex was the only entity having any dealings with respondent.

Further, the fact that the contract awaited approval by the Comptroller pursuant to State Finance Law § 112 (3) provides scant justification for respondent's nondisclosure. We can perceive no legal or logical basis for respondent's rationale that, until approved, the contractor's competitors could upset the contract process by, for example, offering a greater contract price. First, the purpose underlying State Finance Law § 112 is not to prevent competition but, rather, to protect the public from governmental misconduct and improvidence (*see, City of New York v State of New York,* 87 NY2d 982, 985). Second, as recognized by Supreme Court, FedEx's competitors were already well aware of the project by virtue of the public solicitation for bids and the ongoing construction activity on the site. In addition, as already noted, petitioner was willing to consent to redaction of the contract price. As a final matter, respondent has offered no justification for its shielding of the contract document for an additional two months following the Comptroller's approval of the contract.

CARDONA, P. J., CREW III, PETERS and ROSE, JJ., concur.

Ordered that the appeal from the order is dismissed.

Ordered that the judgment is affirmed, with costs.