OPINION OF THE COURT
Lester B. Adler, J.
Petitioner, Verizon New York, Inc., moves for relief pursuant to article 78 of the Civil Practice Law and Rules for a judgment prohibiting respondents from disclosing, pursuant to the Freedom of Information Law (Public Officers Law § 84 et seq. [FOIL]), certain documents currently in possession of the' Village of Rye Brook. By order to show cause dated September 26, 2005, the matter was scheduled for a hearing to determine whether an order preliminarily enjoining enforcement of the respondent’s determination to disclose and make available to the public these documents should be entered. The matter was adjourned on consent of the parties to October 12, 2005, and the order to show cause was amended on September 27, 2005 to reflect the adjournment. The order to show cause was further amended to reflect the consent of the respondents to a stay of enforcement of the determination pursuant to CPLR 7805 pending a final determination by this court.
Prior to the scheduled adjourn date, the court was advised that the parties had entered into a stipulation dated October 7, 2005 whereby the parties, consented to the intervention of Cablevision Systems Corporation as an interested party pursuant to CPLR 7802 (d).[1]
On October 12, 2005, all parties to the action, including intervenor Cablevision, appeared in court and oral argument was heard, following which the court reserved decision.
Factual Background
Verizon is in the process of constructing a national network of fiber-optic cables which will enable it to offer fiber-optic technology to customers throughout New York and the United States, and has recently launched a program to offer cable television service to customers in Westchester, Rockland, Nassau and Suffolk counties.
In July of 2005, Verizon commenced negotiations with Rye Brook to obtain a franchise to provide cable television services *787 to the residents of the Rye Brook community. In connection with these negotiations, on July 18, 2005, Verizon provided Rye Brook with an initial draft of its cable franchise agreement. The draft was accompanied by a cover letter from Verizon’s counsel in which it was requested that the draft document, and all documents related thereto, be kept confidential.
Prior to providing cable television service to a municipality such as Rye Brook, Verizon must first obtain a cable television franchise from Rye Brook (Public Service Law § 219 [1]). The process is initiated by a formal request for a cable franchise, upon receipt of which Rye Brook will be required to designate a cable television advisory committee (16 NYCRR 894.1 [a]).[2] Once Verizon submits its formal request, a copy of the franchise application must be made available for public inspection (see 16 NYCRR 894.2 [b] [1]).
Indeed, the public is intimately involved in a municipality’s grant of a cable franchise since a municipality such as Rye Brook is required to designate a citizen’s advisory committee and, within 10 days after designating the advisory committee, Rye Brook is required to notify the Public Service Commission (PSC) of its action (16 NYCRR 894.1 [b] [1]). Thereafter, the municipality must “take such action as it deems appropriate to advise residents of [Rye Brook] that it has designated an advisory committee and to ensure that such residents have an opportunity to participate in the franchising process” (16 NYCRR 894.1 [b] [2]). Within 90 days of its designation, the committee will be required to submit a final written report to Rye Brook and the PSC.[3]
After receipt of the advisory committee’s report, Rye Brook is required to conduct a public hearing prior to awarding a cable television franchise. Reasonable notice of the hearing must be given to Verizon and to any other franchise applicants, to the public, and to each person that holds a franchise from, or provides cable service in the municipality, in this case intervenor Cablevision (see 16 NYCRR 894.7). The hearing must be held no later than 60 days from: (1) the date upon which the application was filed or, if multiple *788 franchise applications are pending, the last date upon which an application was filed; (2) the closing date specified in a request for proposals; or (3) the earliest date on which the municipality may convene such a hearing pursuant to local law (16 NYCRR 894.7 [e] [l]-[3]). Thereafter, Rye Brook will be required to either award or deny Verizon’s request for a franchise within a period of six months from the date of the public hearing (16 NYCRR 894.8).
If Rye Brook were to award such a franchise agreement to Verizon, Verizon would then have to file an application for a certificate of confirmation with the PSC (Public Service Law § 221 [1]). The PSC may hold a public hearing on such an application if it determines that such a hearing is in the public interest (Public Service Law § 221 [2]). Whether or not a hearing is held, the PSC must issue a certificate of confirmation of the franchise unless it finds that: “(a) the applicant, (b) the proposed cable television system, or (c) the proposed franchise does not conform to the standards established in the regulations promulgated by the [PSC]” or that operation of the proposed cable television system by Verizon would be in violation of law or any regulation or standard promulgated by the PSC (Public Service Law § 221 [3]).
In addition to negotiating with Verizon, Rye Brook is currently engaged in negotiations with Cablevision for the renewal of its franchise agreement. In the event that these negotiations are productive and Cablevision’s franchise agreement is renewed, it too will be required to obtain approval from the PSC (Public Service Law § 222 [1]). The PSC may, in the event it feels necessary, hold a public hearing with respect to any such application by Cablevision (Public Service Law § 222 [2]). As with an initial application for a cable franchise agreement, the PSC will be required to approve Cablevision’s application for renewal unless it finds that Cablevision or the cable television system does not conform to the standards established by the PSC or that approval thereof would be in violation of law, any regulation or standard promulgated by the PSC (Public Service Law § 222 [3]).
As stated above, Verizon began its negotiations with Rye Brook in July of 2005 and, in connection therewith, provided Rye Brook with a draft copy of a franchise agreement, but specifically conditioned in its cover letter that the documents *789 were to be kept confidential.[4] On or about August 25, 2005, intervenor Cablevision made a FOIL request to Rye Brook requesting a copy of all documents submitted by Verizon in connection with the negotiations for a cable franchise agreement.[5] In a letter dated September 20, 2005, an attorney from the law firm representing Rye Brook advised Verizon’s attorney that the results of the legal research performed by his firm supported Cablevision’s position that the documents were subject to disclosure under FOIL.[6] The letter further advised that the documents would not be released until September 28, 2005 in order to afford Verizon the opportunity to seek judicial intervention in the matter. The following day, in a letter authored by a different attorney from the law firm representing Rye Brook, Verizon’s attorney was advised that it was the position of Rye Brook that the documents were not exempt from disclosure pursuant to Public Officers Law § 87 on the ground that, pursuant to Public Service Law § 215 (2) (a) (ii),[7] materials such as the documents are to be as records.
*790 Verizon then commenced this CPLR article 78 proceeding to enjoin Rye Brook from disclosing the documents to Cablevision at this juncture.[8] In support of its petition, Verizon contends that the documents are exempt from disclosure pursuant to Public Officers Law § 87 (2) (c) (contract impairment) and (2) (d) (competitive injury).[9]
Notwithstanding Rye Brook’s prior determination to disclose the documents, which constitutes the basis for this CPLR article 78 proceeding, Rye Brook has failed to answer or otherwise oppose Verizon’s petition and stated during oral argument on October 12, 2005 that it was taking no position with regard to the instant CPLR article 78 proceeding and would leave the determination as to the applicability of the exemptions to the sound discretion of this court. By contrast, intervenor Cablevision vigorously opposes Verizon’s petition and argues that Verizon has failed to prove that the documents fall within the above-cited FOIL exemptions.
Legal Discussion
I. Standard of Review
The Legislature has stated, in unequivocal terms, that “government is the public’s business,” and, therefore, that the public must have access to the government’s records (Public Officers Law § 84). The purpose of FOIL “is to shed light on government decision making, which in turn both permits the electorate to make informed choices regarding governmental activities and facilitates exposure of waste, negligence and abuse” (Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale, 87 NY2d 410, 416 [1995]).
In accordance with this declared purpose, it is well settled that all records of an agency are presumptively available for *791 public inspection unless specifically exempted (Matter of M. Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d 75, 79-80 [1984]; Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 566 [1986]; Matter of LaRocca v Board of Educ. of Jericho Union Free School Dist., 220 AD2d 424 [1995]), and these statutory exemptions “are to be narrowly construed to provide maximum access, and the [entity] seeking to prevent disclosure carries the burden of demonstrating that the requested material falls squarely within a FOIL exemption by articulating a particularized and specific justification for denying access” (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 566 [1986]; see also Matter of Buffalo News v Buffalo Enter. Dev. Corp., 84 NY2d 488, 492 [1994], quoting Matter of Russo v Nassau County Community Coll., 81 NY2d 690, 697 [1993]; Matter of Newsday, Inc. v Empire State Dev. Corp., 98 NY2d 359, 362 [2002], quoting Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979]).
Given the public interest in disclosure, courts place the burden of proof on the party seeking to invoke the exemptions to prove entitlement thereto (Public Officers Law § 89 [5] [e]; Matter of Bahnken v New York City Fire Dept., 17 AD3d 228, 229 [2005]).
II. Statutory Exemptions
A. Public Officers Law § 87 (2) (c) — Impairment of Contract Awards
Petitioner first argues that the documents are exempt from disclosure pursuant to Public Officers Law § 87 (2) (c) which provides, in pertinent part, that an agency, as that term is defined by Public Officers Law § 86 (3),[10] must “make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that . . . if disclosed would impair present or imminent contract awards or collective bargaining negotiations . . . .”
Because this statutory exemption is limited to the impairment of “contract awards,” it is generally invoked in two factual scenarios. One involves a situation in which the agency is in the *792 process of seeking bids or proposals from companies in connection with the agency’s purchase of goods and/or services (NY St Comm on Open Govt Advisory Op No. 11235 [1999]). In such a competitive bidding process, premature disclosure of bids prior to the deadline for submissions may provide the party seeking disclosure with an unfair advantage and an “impairment” would likely result (id.). Rather than providing the party seeking disclosure with an unfair advantage, the agency is statutorily empowered to withhold the documents from disclosure.[11] Of particular importance to the applicability of Public Officers Law § 87 (2) (c), however, is that more than one entity be involved in negotiations, for where only one entity is involved, no inequality of knowledge can be said to exist and, therefore, no edge can be unfairly given (Community Bd. 7 of Borough of Manhattan v Schaffer, 150 Misc 2d 770, 771 [1991], affd 183 AD2d 422 [1992], read on other grounds 84 NY2d 148 [1994]; see also Matter of Laborers’ Intl. Union of N. Am., Local No. 17, 280 AD2d at 70).
The other situation arises where section 87 (2) (c) is asserted to exempt from disclosure appraisals obtained by an agency in connection with a real property transaction. Under these circumstances, it is probable that disclosure of the appraisals would impair the agency’s ability to engage in a competitive bidding process with the public with regard to its real property transaction. As a result, it has been held that the appraisals are exempt from disclosure pursuant to Public Officers Law § 87 (2) (c) (Matter of Murray v Troy Urban Renewal Agency, 84 AD2d 612, 613 [1981], affd 56 NY2d 888 [1982]).
In both of these situations the applicability of the exemption is based upon an inequality of knowledge, for in the absence of such inequality “it is questionable and difficult to envision how disclosure would impair present or imminent contract awards” (NY St Comm on Open Govt Advisory Op No. 11590 [1999] [internal quotation marks omitted]).
*793 B. Public Officers Law § 87 (2) (d) — Substantial Injury to Competitive Position
Petitioner’s second basis for exemption is that disclosure of the requested documents would cause substantial injury to Verizon’s competitive position. Pursuant to Public Officers Law § 87 (2) (d), an agency must
“make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that: . . .
“(d) are trade secrets or are submitted to an agency by a commercial enterprise or derived from information obtained from a commercial enterprise and which if disclosed would cause substantial injury to the competitive position of the subject enterprise
Since it is undisputed that the requested documents were compiled by and obtained from Verizon, a commercial enterprise, the question becomes whether Verizon has demonstrated “ ‘[a]ctual competition and the likelihood of substantial competitive injury’ ” (Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale, 87 NY2d 410, 421 [1995], quoting Gulf & W. Indus., Inc. v United States, 615 F2d 527, 530 [1979]; see also Matter of Glens Falls Newspapers v Counties of Warren & Washington Indus. Dev. Agency, 257 AD2d 948 [1999]; Matter of Sunset Energy Fleet v New York State Dept. of Envtl. Conservation, 285 AD2d 865 [2001]).[12]
Whether “substantial competitive injury” exists for purposes of FOIL’S exemption for commercial information turns on the commercial value of the requested information to Verizon’s competitors and the cost of acquiring it through other means (Matter of Encore Coll. Bookstores, 87 NY2d at 420, citing Worthington Compressors, Inc. v Costle, 662 F2d 45, 51 [1981]). Because Verizon can suffer competitive harm only if the desired material has commercial value to its competitors, this court *794 must consider how valuable the information will be to Cablevision, as well as the resultant damage to Verizon. (Id.; see also Matter of New York State Elec. & Gas Corp. v New York State Energy Planning Bd., 221 AD2d 121, 124-125 [1996], lv granted 89 NY2d 803 [1996], appeal withdrawn 89 NY2d 1031 [1997]; Matter of Glens Falls Newspapers, 257 AD2d at 949; Matter of Passino v Jefferson-Lewis, 277 AD2d 1028 [2000], lv denied 96 NY2d 709 [2001]; Matter of Sunset Energy Fleet, 285 AD2d at 867.)
The party seeking to invoke this exemption bears the burden of establishing that the material falls “squarely within the ambit of one of [the] statutory exemptions” (Matter of Encore Coll. Bookstores, 87 NY2d at 421). “Mere conclusory allegations, without factual support, that the requested materials fall within an exemption are insufficient to sustain [this] burden of proof’ (Matter of Professional Stds. Review Council of Am. v New York State Dept. of Health, 193 AD2d 937, 939 [1993], quoting Matter of Polansky v Regan, 81 AD2d 102, 103 [1981] [internal quotation marks omitted].)
Conclusion
As an initial matter, the court must determine if this proceeding is ripe for adjudication since Rye Brook has opted to take a “no position” stance in this matter and has neither answered the petition nor otherwise opposed the petition. On the other hand, Cablevision has vehemently opposed the instant proceeding and contends that Verizon has failed to sustain its burden in proving the documents fall within one of two claimed exemptions.
Pursuant to CPLR 7804 (e), in the event a body or officer fails to either file and serve an answer or to move to dismiss, a court may either: (1) issue a judgment in favor of the petitioner, or (2) order that respondent submit an answer.
It is inappropriate, however, to issue a default judgment “merely upon the basis of a failure to answer [a] petition on the return date thereof, unless it appears that such failure to plead was intentional and that the administrative body has no intention to have the controversy determined on the merits” (Matter of Tanalski v New York State Div. of Human Rights, 262 AD2d 117, 118 [1999]; Matter of Murray v Matusiak, 247 AD2d 303 [1998]; Matter of Abrams v Kern, 35 AD2d 971 [1970]). Rye Brook has, in essence, declined to join issue in this matter by stating at oral argument that it would defer to the court to *795 make a determination as to whether the documents are subject to disclosure or not rather than Rye Brook becoming “a party and participating in the litigation and to have to spend money with respect to a battle between two cable providers that the village has no direct interest in” (transcript of oral argument at 27-28). In addition, counsel for Rye Brook stated again and again that Rye Brook wished to remain neutral in this proceeding and would rely on the judgment of the court. While it appears that respondents’ failure to plead is intentional, the record is clear that Rye Brook has every intention of having this controversy resolved on the merits, as evidenced by its appearance for oral argument and the statements made thereat (see Matter of Castell v City of Saratoga Springs, 3 AD3d 774, 775 [2004]).
Therefore, the question becomes whether, under the circumstances of this case, the court is required to direct service of an answer before determining the merits of the proceeding (Matter of Tanalski, 262 AD2d at 118). There is little, if any, factual dispute here as to the parties’ respective positions. Verizon contends the documents are exempt pursuant to Public Officers Law § 87 (2) (c) and (d), while intervener Cablevision claims that Verizon has failed to meet its burden of establishing entitlement to an exemption. Juxtaposed to the divergent positions of Verizon and Cablevision is the Village of Rye Brook which, despite its earlier determination that the documents were subject to disclosure, stated over and over during oral argument that Rye Brook wishes to remain neutral and does not take any position at this point in time as to the applicability of the FOIL exemptions.
Rye Brook’s current noncommittal stance is particularly disconcerting since it is a party to the negotiations with Verizon and its government represents the interests of the citizens of Rye Brook. Furthermore, notwithstanding Rye Brook’s present disclaimer of having rendered a determination, it had a statutory obligation to make a determination with respect to Cablevision’s FOIL request (see Public Officers Law § 89 [3]), and this court finds that it did in fact make such a determination in its September 21, 2005 letter. However, in light of the noncommittal position that Rye Brook has now taken, additional factual submissions are not required and, since “no prejudice will result from the failure to require an answer,” it is the determination of this court that, under the unique set of facts presented in this case, the court can render a determination on the *796 merits of the petition without service of an answer by respondents (see Matter of Tanalski, 262 AD2d 117, 118 [1999]; see also Matter of Rudin Mgt. Co. v Commissioner of Dept. of Consumer Affairs of City of N.Y., 213 AD2d 185, 186 [1995]).
The threshold issue of ripeness having been resolved, the court now turns to the issue of the applicability, if any, of the statutory exemptions contained in Public Officers Law § 87 (2). I. Applicability of Public Officers Law § 87 (2) (d)
Verizon alleges in the petition that disclosure of the documents would give Cablevision a “specific roadmap” of its “strategy for contract development, negotiation procedures and operations.” Verizon argues that disclosure of the information contained in the documents before an agreement is fully negotiated and approved by Rye Brook would place Verizon at a “substantial competitive disadvantage.” Verizon further alleges that public disclosure of the documents by Rye Brook will adversely impact Verizon’s “ability to negotiate flexibly to meet the needs of other communities” in Westchester, Rockland, Nassau and Suffolk counties.
In response, intervenor Cablevision argues that, in the absence of any “competent evidence demonstrating some articulated competitive injury,” Verizon has failed to sustain its burden of proving entitlement to the exemption contained in Public Officers Law § 87 (2) (d).
Since both Verizon and Cablevision are in the business of providing cable television services, and based upon the nonexclusive nature of cable franchise agreements, the potential for competition between these two commercial enterprises in the future appears evident. However, while Verizon has demonstrated the existence of actual competition for purpose of this FOIL exemption, the record is devoid of any factual support for Verizon’s conclusory allegations that disclosure of the documents will result in the likelihood of substantial competitive injury (see Matter of Professional Stds. Review Council of Am., 193 AD2d at 939).
The only amplification of the allegations in the petition made at oral argument was Verizon’s claim that disclosure would give Cablevision the opportunity to “confuse the process” and to “get negotiations ‘off track’ in a way that’s best for Cablevision and not the best for the municipality” (transcript of oral argument at 23). Without any further elaboration, counsel for Verizon additionally remarked that Verizon would sustain “substan *797 tial competitive injury” because disclosure would inhibit Verizon “from making a proposal that’s unique to the municipality” (id.).
Indeed, all of the allegations made by Verizon on the issue of the damage that would result from disclosure, whether in the petition and papers in support thereof or the statements made at oral argument, are conclusory in nature. In addition, petitioner fails to establish, or even allege, what the specific harm is that it will sustain as a result of disclosure of the documents (cf. Matter of Encore Coll. Bookstores, 87 NY2d at 416 [decrease in sales revenue following disclosure of spring semester booklist to petitioner]; Matter of New York State Elec. & Gas Corp., 221 AD2d at 124-125 [ability to infer essential aspects of production costs fundamental to projecting future costs]).
Furthermore, Verizon has failed to demonstrate that any potential injury would be substantial enough to justify a finding that the documents fall squarely within the exemption of Public Officers Law § 87 (2) (d) (see Matter of Bahnken, 17 AD3d at 230). Therefore, it is the finding of this court that Verizon has failed to sustain its burden of proof that the documents are exempt pursuant to Public Officers Law § 87 (2) (d).
II. Applicability of Public Officers Law § 87 (2) (c)
The court has reached a different conclusion, however, with respect to Verizon’s claim regarding the applicability of Public Officers Law § 87 (2) (c).
While there is no case law directly on point, the decisions which cite Public Officers Law § 87 (2) (c) with respect to the process of seeking bids or proposals are clearly analogous to the facts presented in this case. The crux of these holdings is that, where more than one entity is involved in the negotiation process and an inequality of knowledge exists, thereby giving one entity an unfair advantage, impairment is likely to result and disclosure of records can be justifiably denied (see Community Bd. 7 of Borough of Manhattan, 150 Misc 2d at 771; Matter of Laborers’ Intl. Union of N. Am., Local No. 17, 280 AD2d at 70).
The court is unpersuaded by intervenor Cablevision’s claim that the negotiations between Verizon and Rye Brook are occurring in a noncompetitive situation. Specifically, Cablevision argues that, due to the nonexclusive nature of cable franchise agreements and the fact that there are multiple franchises to be awarded, Cablevision and Verizon are not competing with one another in the context of the franchise agreement itself, but *798 rather will be competing with the residents of Rye Brook as providers of cable television services (transcript of oral argument at 45).
Although it appears that a request for proposals (RFP) was not made by Rye Brook in connection with this matter, Cablevision’s contract is up for renewal and Rye Brook is currently in the process of negotiating with Cablevision, as well as Verizon. To say that the negotiations in this case are not taking place in a competitive atmosphere merely because no RFPs were made by Rye Brook is to argue form over substance. Cablevision’s argument ignores the fact that there is nothing in the statute, nor any indication in the record before this court, that Rye Brook is required to renew Cablevision’s franchise agreement. It is factually possible that Rye Brook could opt not to renew its agreement with Cablevision and could award a franchise agreement to Verizon.
The bottom line is that Rye Brook is currently negotiating with both Verizon and Cablevision to provide cable television services for the residents of Rye Brook. Premature disclosure of the documents would enable Cablevision to obtain an unfair advantage over Verizon. Certainly, this unfair advantage may be to the ultimate detriment of Rye Brook and its cable television consumers.[13]
Moreover, once Verizon applies for a franchise agreement, the documents will be subject to disclosure pursuant to 16 NYCRR 894.2 (see Matter of Empire Golf Mgt., 18 AD3d 334 [2005]; Matter of Laborers’ Intl. Union of N. Am., Local No. 17 v New York State Dept. of Transp., 280 AD2d 66 [2001]; Matter of Cross-Sound Ferry Servs., 219 AD2d 346 [1995]; Matter of CAT*ASI, Inc. v New York State Ins. Dept., 195 Misc 2d 456 [2002]; Contracting Plumbers Coop. Restoration Corp., 105 Misc 2d 951 [1980]).
Nothing in the court’s decision runs afoul of the declared purpose of FOIL, which is to afford the citizens of Rye Brook the opportunity to make an informed choice regarding the award of a franchise agreement to Verizon. These preliminary negotia *799 tions,[14] if they reach fruition, will eventually see the light of day in ample time for Cablevision and, more importantly, the public, to analyze and comment thereon since Rye Brook will be required, after providing reasonable notice thereof, to conduct a public hearing prior to awarding a franchise agreement. Thereafter, any proposed franchise agreement will be subjected to further scrutiny by the PSC. This inquiry must include an analysis of whether or not the proposed franchise conforms to the standards promulgated by the PSC and whether or not the operation of the proposed cable television system by Verizon would be in violation of law or any regulation or standard promulgated by the PSC (Public Service Law § 221 [3]).
In sum, the statutory framework for the granting of a franchise agreement provides for public inspection and comment prior to the award of a franchise agreement for cable television services and will provide the citizens of Rye Brook with the opportunity to participate in the governmental decision-making process regarding Verizon’s application for a franchise agreement. The public will in no way be harmed by nondisclosure of the documents at this point. In fact, an argument can be made that the public will actually benefit since there would be a true competitive process employed in connection with Rye Brook’s award of a cable franchise to Verizon and the renewal of Cablevision’s current franchise agreement.[15]
Therefore, the petition is granted to the extent that the court finds the documents are exempt from disclosure pursuant to Public Officers Law § 87 (2) (c). Therefore, Rye Brook is enjoined from releasing the documents until such time as Verizon submits a formal request for a franchise agreement to Rye Brook.

. The stipulation was “So Ordered” by this court on the record on October 12, 2005.

. The alternative franchising procedure provided for in 16 NYCRR 894.9 is not applicable here since Cablevision is currently servicing the proposed franchise area.

. The committee’s report must contain a description of the characteristics of the type of cable system deemed best suited to the needs and interests of Rye Brook (16 NYCRR 894.2 [a], [b]).

. At no time prior to Rye Brook’s determination on September 21, 2005 that it would disclose the documents in response to Cablevision’s FOIL request did Rye Brook ever indicate to Verizon that confidentiality would not be insured, thereby extinguishing any reasonable expectation that the documents would not be made available to the public (Matter of Lockheed Martin IMS Corp. v New York State Dept. of Family Assistance, 256 AD2d 847 [1998]).

. During oral argument, counsel for Cablevision stated, in response to a question posed by the court, that a FOIL request had also been made by Cablevision with respect to negotiations between Verizon and the Village of Massapequa Park but rather than providing the documents in response to its FOIL request, the Village of Massapequa Park instead provided these documents after the franchise application was filed in accordance with 16 NYCRR 894.2 (b) (1).

. Interventor Cablevision contends in its memorandum of law that Rye Brook initially denied their request for disclosure. In support of this contention, Cablevision relies on the September 17, 2005 letter from Edward Beane, Esq. (Rye Brook’s counsel) to Emilie Spaulding, Esq. (Cablevision’s counsel). The court has reviewed the letter and is of the opinion that the purpose thereof was to advise counsel for Cablevision that the request was still under consideration.

. Public Service Law § 215 (2) (a) (ii) provides that the PSC must:
“(2) To the extent permitted by, and not contrary to applicable federal law and rules and regulations:
“(a) prescribe standards for procedures and practices which municipalities shall follow in granting franchises, which standards shall provide for . . . (ii) the filing of all franchise applications and related documents as public records, with reasonable notice to the public that such records are open to inspection and examination during reasonable business hours . . .

. Petitioner acknowledges that pursuant to 16 NYCRR 894.2 (b) (1), copies of the documents must be made available to the public once a formal request for a franchise agreement has been made.

. A similar CPLR article 78 proceeding was commenced in connection with Cablevision’s FOIL request for disclosure of documents regarding Verizon’s negotiations with the Village of Elmsford. A temporary restraining order was issued in connection with that matter; however, Cablevision withdrew the FOIL request prior to the return date for the hearing on the preliminary injunction. At oral argument, counsel for Cablevision stated that “[cjablevision made a determination at that time not to proceed with litigation. It was a decision made relative to that particular circumstance, which was unique to that village” (transcript of oral argument at 42).

. Public Officers Law § 86 (3) defines “agency” as “any state or municipal department, board, bureau, division, commission, committee, public authority, public corporation, council, office or other governmental entity performing a governmental or proprietary function for the state or any one or more municipalities thereof, except the judiciary or the state legislature.” Thus, Rye Brook falls squarely within the definition of an agency which is subject to FOIL requirements.

. However, once the submission process has ended and a contract is conditionally awarded to a bidder, the winning proposal can no longer be considered “competitively sensitive” and, therefore, the exemption contained in Public Officers Law § 87 (2) (c) is no longer applicable (Matter of Empire Golf Mgt., LLC v Olivieri, 18 AD3d 334, 335 [2005]; Matter of Laborers’ Intl. Union of N. Am., Local No. 17 v New York State Dept. of Transp., 280 AD2d 66, 70 [2001]; Matter of Cross-Sound, Ferry Servs. v Department of Transp., 219 AD2d 346, 349 [1995]; Matter of CAT*ASI, Inc. v New York State Ins. Dept., 195 Misc 2d 456 [2002]; Contracting Plumbers Coop. Restoration Corp. v Ameruso, 105 Misc 2d 951, 952 [1980]).

. “Substantial competitive injury” is not defined by statute and, prior to the Court of Appeals decision in Matter of Encore Coll. Bookstores, had not been subjected to judicial interpretation (Matter of Encore Coll. Bookstores, 87 NY2d at 419).
In Matter of Encore Coll. Bookstores, the Court of Appeals found that, based upon the Legislature’s use of language that is virtually identical to the analogous federal exemption for commercial information, the Legislature had signaled its intent “that the substantial competitive injury prong of the FOIL exemption be similar in scope to the substantial competitive harm prong of its Federal counterpart” (id. at 419-420).

. Although Cablevision claimed in its memorandum of law that “[t]he same public interest in full disclosure applies early in the negotiation process as it does later,” no case law was cited in support of this allegation. Indeed, counsel for Cablevision conceded at oral argument that it was not aware of the existence of any case law which would support this position.

. To the extent that a court of concurrent jurisdiction has held Public Officers Law § 87 (2) (c) inapplicable to preliminary negotiations, this court respectfully disagrees (Waste-Stream., Inc. v St. Lawrence County Solid Waste Disposal Auth., 166 Misc 2d 6 [1995]).

. Counsel for Rye Brook noted during oral argument that “[i]n a perfect world, it would be to the village’s advantage to have each cable provider dealt with separately and confidentially” (transcript of oral argument at 26).