■ In the Matter of PATRICK BAHNKEN, as President of The Uniformed EMTs and Paramedics, Local 2507, Appellant, v NEW YORK CITY FIRE DEPARTMENT, Respondent. [794 NYS2d 312]—

Judgment, Supreme Court, New York County (Michael D. Stallman, J.), entered February 18, 2004, which denied the peti-

tion to direct respondent to furnish unredacted copies of documents previously supplied in a redacted form, reversed, on the law, without costs, and the petition granted.

This appeal involves the propriety of respondent's claimed exemption from disclosure of contract provisions relating to compensation, patient billing, insurance and internal hospital quality assurance programs under the Freedom of Information Law (FOIL). Petitioner sent respondent a FOIL request for copies of all contracts entered into since January 1, 1997 between any ambulance service company operating in the 911 system and a number of designated private hospitals and/or their affiliates. After respondent advised the hospitals of the FOIL request, a number of them took the position that the entire contract should be deemed a trade secret and/or that disclosure would cause substantial injury to their competitive position. Respondent reviewed the contracts and determined that they were not exempt from disclosure under FOIL, except for those portions dealing with compensation, patient billing, insurance and internal hospital quality assurance programs. Respondent thereafter redacted those portions of the contracts, maintaining that disclosure of those provisions would cause substantial injury to the competitive position of the hospitals and they were therefore exempt from disclosure (Public Officers Law § 87 [2] [d]). The redacted contracts were duly provided to petitioner who appealed respondent's determination, arguing that respondent had not met its burden of articulating a justification for denying access. The Appeals Officer upheld the redaction, and petitioner thereafter moved to obtain unredacted copies of the contracts.

Although the hospitals in question signed the standard Fire Department agreement required of all hospitals participating in the 911 system, the ambulance providers for those hospitals did not. The contracts in question involve private agreements between the participating hospitals and their ambulance contractors, to which respondent is not a party. Respondent claims the contracts were provided to it with the understanding that confidentiality would be maintained, anticipating that several of the hospitals would intervene in the proceeding, but there is no indication in the record that any did. After conducting an in camera inspection of the contracts, the motion court decided respondent had a rational basis for making the redactions, and upheld the determination as neither arbitrary nor capricious.

A party claiming exemption from disclosure of a particular document requested pursuant to FOIL bears the burden of proving entitlement to the exemption (Public Officers Law § 89 [5] [e]; *Matter of Laureano v Grimes*, 179 AD2d 602 [1992]). Thus,

the motion court erred in applying the normal CPLR article 78 "arbitrary and capricious" standard of review.

While it is true that records containing "trade secrets . . . which if disclosed would cause substantial injury to the competitive position of the subject enterprise" are exempt from disclosure (Public Officers Law § 87 [2] [d]), the basis for the exemption must be "a particularized and specific justification for denying access" (*Matter of Capital Newspapers Div. of Hearst Corp. v Burns,* 67 NY2d 562, 566 [1986]). Disclosure provisions must be given an expansive interpretation to meet FOIL's declared purpose of ensuring open government, and exemptions must be narrowly construed (*Matter of Gould v New York City Police Dept.,* 89 NY2d 267 [1996]; *see also Matter of Newsday, Inc. v Empire State Dev. Corp.,* 98 NY2d 359 [2002]; *Matter of Fink v Lefkowitz,* 47 NY2d 567, 571 [1979]).

Respondent attempts to set forth a particularized justification for exemption by arguing that the private voluntary hospitals in question are commercial enterprises actively competing for ambulance services, and disclosure would affect their ability to contract for identical services. This argument is speculative and unsupported by any evidentiary documentation. Despite the argument that there is a potential for injury, respondent has yet to demonstrate that any potential injury would be substantial enough to fall squarely within the exemption under Public Officers Law § 87 (2) (d).

Even our colleague in the dissent is constrained to posit the same conclusory argument as respondent, lacking the specificity and evidentiary detail necessary to meet the burden warranting nondisclosure. Clearly the hospitals themselves would have seen fit to intervene if this issue were as crucial to their well-being as argued by respondent. Their declination to do so speaks for itself.

Although Public Health Law § 3006 protects from disclosure any records or proceedings with respect to a hospital's quality assurance program, contract terms requiring the establishment of such a committee are subject to FOIL disclosure. Respondent has shown no particularized justification to the contrary. Concur—Mazzarelli, J.P., Friedman, Sweeny and Catterson, JJ.

Friedman, J., dissents in part in a memorandum as follows: Respondent New York City Fire Department administers the City's pre-hospital emergency medical care 911 system. A number of private hospitals that participate in the 911 system do not operate their own ambulances, but, with the Fire Department's approval, enter into agreements for ambulance services with a private vendor. These private hospitals provide

copies of their ambulance service contracts to the Fire Department, with the understanding that the confidentiality of these "extensively negotiated" contracts will be maintained.

At issue on this appeal is petitioner's request under the Freedom of Information Law ([FOIL] Public Officers Law art 6) that the Fire Department produce the contracts for ambulance service of certain private, not-for-profit hospitals that participate in the 911 system. The Fire Department, invoking the FOIL exemption for records "submitted to an agency by a commercial enterprise or derived from information obtained from a commercial enterprise and which if disclosed would cause substantial injury to the competitive position of the subject enterprise" (Public Officers Law § 87 [2] [d]), produced the contracts in redacted form, not disclosing the portions dealing with "compensation, patient billing, insurance and internal hospital quality assurance programs."* Petitioner subsequently commenced this CPLR article 78 proceeding to compel the production of unredacted copies of the contracts.

I agree with the majority that the City has failed to justify the majority of the redactions from the requested contracts. I respectfully dissent, however, solely to the extent the majority's decision requires the disclosure of the contracts' price terms, and of the amounts of insurance the contracts require the ambulance vendor to purchase. Even in the absence of a detailed evidentiary showing, it is plain that disclosure of such negotiated contractual terms is likely to "cause substantial injury to the competitive position" of the hospitals. Specifically, the hospitals' bargaining position in negotiations for future ambulance service from other vendors will be weakened if the prices they are paying under these contracts, and the amounts of insurance they require the present vendor to purchase, become publicly available (cf. Matter of Glens Falls Newspapers v Counties of Warren & Washington Indus. Dev. Agency, 257 AD2d 948, 950 [1999] [the terms of a settlement between a power utility and a power producer were exempt from FOIL to avoid "jeopardizing" the utility's "ability to negotiate effectively with other producers in order to obtain the lowest rates for its customers"]). As stated in the City's answer to the petition, "disclosure of price [terms of the contracts] . . . would impair

---

* While section 87 (2) (d) also exempts "trade secrets" from FOIL disclosure, the City does not argue that any of the material at issue constitutes a "trade secret." I note that the majority, by substituting an ellipsis for a significant phrase ("or are submitted to an agency by a commercial enterprise or derived from information obtained from a commercial enterprise and") in its quotation from the statute, gives the inaccurate impression that section 87 (2) (d) exempts only trade secrets from FOIL disclosure.

[the hospitals'] ability to contract for identical or similar services from other vendors now and in the future." While the majority faults the City for failing to "demonstrate" potential injury with "specificity and evidentiary detail," it is difficult to see what further specificity and evidentiary detail are needed to demonstrate that disclosure of price terms would cause the hospitals competitive injury by damaging their bargaining positions. Further, withholding the price and quantitative insurance terms of these private contracts from disclosure will not interfere with the achievement of FOIL's goal, which is "to shed light on government decision making, which in turn both permits the electorate to make informed choices regarding governmental activities and facilitates exposure of waste, negligence and abuse" (*Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale*, 87 NY2d 410, 416 [1995], citing, inter alia, Public Officers Law § 84).

Our analysis should not be affected by the hospitals' not-for-profit status. The standard for establishing the applicability of FOIL's competitive-harm exemption is a showing of "[a]ctual competition and the likelihood of substantial competitive injury" (*Encore Coll. Bookstores*, 87 NY2d at 421 [citation omitted]). The ability of a not-for-profit institution to carry out its mission will be prejudiced to the extent the institution's bargaining position in negotiating with its vendors is weakened. Such prejudice to a not-for-profit institution is the functional equivalent of "competitive injury" in the for-profit context. Moreover, a not-for-profit institution is a "commercial enterprise" (Public Officers Law § 87 [2] [d]) in the sense that it engages in commerce. Significantly, the corresponding exemption under the federal Freedom of Information Act (5 USC § 552 [b] [4])—to which we may look for guidance in construing FOIL's competitive-injury exemption (*see Encore Coll. Bookstores*, 87 NY2d at 420)—applies to the confidential commercial or financial information of an organization that "does not have profit as its primary aim" (*American Airlines, Inc. v National Mediation Bd.*, 588 F2d 863, 870 [2d Cir 1978] [referring to a labor union]).

In ordering that the contracts be produced with no redactions at all, the majority places unwarranted emphasis on the fact that the hospitals have not intervened in this proceeding. Since the competitive-injury exemption clearly applies to the price and quantitative insurance terms of the contracts, it is irrelevant that these not-for-profit hospitals have not expended their limited resources on appearing in this proceeding to make arguments that would merely echo those of the Corporation Counsel.

I would add that the hospitals, having provided the contracts to the Fire Department with the understanding that the confidentiality of the information therein would be maintained, should not be penalized for relying on the government to keep its commitment to the extent permitted by law. Further, it seems particularly unfair to penalize the hospitals for not having intervened in this proceeding, and to find, at this point, that "[t]heir declination to do so speaks for itself," after the City has actively opposed the petition, the trial court has conducted an in camera inspection, and the trial court has rendered a decision dismissing the petition.

For the foregoing reasons, I would modify the judgment to grant the petition to the extent of directing the Fire Department to furnish copies of the contracts from which only the price terms, and the amounts of insurance the vendor is required to purchase, have been redacted. To the extent the majority does otherwise, I respectfully dissent.