OPINION OF THE COURT
Doris Ling-Cohan, J.
The issue presented to this court is whether the public has a right to records filed by insurance companies with the State of New York Insurance Department, which are required pursuant to laws enacted to eliminate redlining. Redlining is a practice by which insurers deny insurance coverage or cancel insurance policies, solely on the basis of the geographical location of brokers or of those seeking insurance, and deprives consumers of competition in the insurance market.
Petitioner Marty Markowitz, Brooklyn Borough President, brings this CPLR article 78 proceeding to annul an August 9, 2004 and an October 18, 2004 determination by respondent Gregory V Serio, former Superintendent of the State of New York Insurance Department, both of which denied petitioner’s requests for access to certain reports filed with the Department by, among other insurance companies, intervenor-respondents Chubb & Son, Farmers New Century Ins. Co., State Farm Mutual Automobile Ins. Co., and State Farm Fire & Casualty Ins. Co. (collectively, the Insurance Companies).*
Factual & Legal Background
In 1979, New York State passed legislation making it illegal for insurance companies to engage in redlining, the practice of refusing to issue policies based solely on the geographical location of the person seeking insurance; such legislation is applicable to automotive and fire insurance. (L 1979, chs 503, 690, codified at Insurance Law § 3429 et seq.) Shortly thereafter, the Insurance Department issued Regulation 90, which implements the statute. Regulation 90 is codified at 11 NYCRR part 218.
Insofar as is relevant herein, the purpose of the regulation is “to make . . . private passenger automobile insurance readily available in the voluntary market by prohibiting companies *441 from engaging in redlining practices” (11 NYCRR 218.1). To achieve this goal, Regulation 90 requires each insurer to compile, by zip code, information concerning the automobile insurance policies that it has “issued, renewed, cancelled ... or nonrenewed” (11 NYCRR 218.7 [b] [1]). The insurance companies are required to file this information with the Insurance Department annually. Further, the regulation expressly requires that “every such report shall be a public record.” (11 NYCRR 218.7 [d].)
The Insurance Companies filed the reports at issue in compliance with the Department’s Regulation 90. In their cover letters accompanying the filings, the Insurance Companies asserted that their reports contained proprietary information and requested that the reports be kept confidential.
Notwithstanding Regulation 90, which requires that such reports be public records, the Department takes the position that the reports submitted pursuant to Regulation 90 may be kept confidential for a period of six years.
On March 30, 2004, petitioner submitted a request to the Department, pursuant to the Freedom of Information Law (FOIL) (Public Officers Law § 84 et seq.) for various records pertaining to automobile insurers in New York State. On June 16, 2004, the Department provided some of the materials requested, but, relying on Public Officers Law § 87 (2) (d), it withheld all reports on policies in force, broken down by zip code, for the years 2000 through 2003, on the basis that the records were “trade secrets or . . . derived from information obtained from a commercial enterprise and which if disclosed would cause substantial injury to the competitive position of the subject enterprise.” (See exhibit B, notice of petition [internal quotations marks omitted].)
By letter dated June 17, 2004, petitioner administratively appealed the Department’s denial of access to those documents, and that same day, submitted a second FOIL request for records of, among other things, requests by insurers to exempt their Regulation 90 filings from disclosure. By letter dated July 7, 2004, the Department notified the Insurance Companies that petitioner had requested certain of the Regulation 90 reports that they had filed and, pursuant to Public Officers Law § 89 (5) (b) (2), invited them to submit written statements “on the necessity for continuing the exception from disclosure.” (See exhibit G, answer.)
On August 5, 2004, the Department determined, for the second time, that the Regulation 90 reports would be withheld, *442 pursuant to Public Officers Law § 87 (2) (d), and on August 9, 2004, the Department denied petitioner’s June 17, 2004 appeal. On August 16, 2004, petitioner appealed the Department’s August 5, 2004 determination, and on October 18, 2004, the Department denied that appeal, for the same reasons that it had denied petitioner’s appeal of the Department’s initial June 16, 2004 determination.
Discussion
Public Officers Law § 87 (2) provides that:
“[e]ach agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that:
“(d) are trade secrets or are submitted to an agency by a commercial enterprise or derived from information obtained from a commercial enterprise and which if disclosed would cause substantial injury to the competitive position of the subject enterprise.”
As evidenced by the word “may,” in the phrase “may deny access,” the provisions of Public Officers Law § 87 (2) which permit agencies to exempt certain records from disclosure are “permissive rather than mandatory.” (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 567 [1986].) Accordingly, and for the reasons elaborated below, the Department’s argument that Public Officers Law § 87 (2) (d) is inconsistent with, and that it thus trumps the Regulation 90 requirement that “every such report shall be a public record” (11 NYCRR 218.7 [d]), is untenable.
One of the most fundamental principles of administrative law is that an agency is bound by its own duly promulgated regulations. (See Matter of Gilman v New York State Div. of Hous. & Community Renewal, 99 NY2d 144 [2002]; Matter of Vukel v New York Water & Sewer Mains, 94 NY2d 494 [2000]; Allen v Blum, 58 NY2d 954 [1983]; Matter of Frick v Bahou, 56 NY2d 777 [1982].) Here, the Department has ignored its regulation which provides that insurers’ filings are to be public records. Accordingly, the Department’s determinations to keep the subject records confidential for a period of six years cannot stand.
Furthermore, it is well settled that all records of a public agency are presumptively available for public inspection under FOIL, unless the documents in question fall squarely within *443 one of the specific and narrowly construed exceptions to disclosure set forth in Public Officers Law § 87 (2). (Matter of Troy Sand & Gravel Co. v New York State Dept. of Transp., 277 AD2d 782, 784 [3d Dept 2000]; Matter of Sunset Energy Fleet v New York State Dept. of Envtl. Conservation, 285 AD2d 865, 866 [3d Dept 2001]; Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 566 [1986].) Thus, this court must also address whether the zip code submissions qualify for an exemption under FOIL.
The applicable FOIL statute, Public Officers Law § 87 (2), provides:
“Each agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that: . . .
“(d) are trade secrets or are submitted to an agency by a commercial enterprise or derived from information obtained from a commercial enterprise and which if disclosed would cause substantial injury to the competitive position of the subject enterprise.”
Although Regulation 90 states that “every such report shall be a public record,” such statutory language declaring that all records shall be public does not preclude an agency from restricting access to documents when such exclusion is necessary or appropriate for the protection of trade secrets. (Matter of New York Tel. Co. v Public Serv. Commn., 56 NY2d 213, 219-220 [1982].) Specifically, in cases of unfair competition and breach of employee fiduciary duty, courts have looked to Restatement of Torts § 757, Comment b, for the definition of a trade secret. (See Ashland Mgt. v Janien, 82 NY2d 395, 407 [1993]; Wiener v Lazard Freres & Co., 241 AD2d 114, 123 [1998]; Softel, Inc. v Dragon Med. & Scientific Communications, Inc., 118 F3d 955, 968 [2d Cir 1997].) That definition provides: “A trade secret may consist of any formula, pattern, device or compilation of information which is used in one’s business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.” (Restatement of Torts § 757, Comment b; Ashland at 407.)
In determining whether the information qualifies as a trade secret under the Restatement, courts have considered the following factors, set forth in Comment b, to be relevant:
“(1) The extent to which the information is known outside of his business; (2) the extent to which it is *444 known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.” (Wiener v Lazard Freres & Co., 241 AD2d 114, 123-124 [1st Dept 1998]; see Integrated Cash Mgt. Servs., Inc. v Digital Transactions, Inc., 920 F2d 171, 173 [2d Cir 1990].)
Although courts have considered the Restatement’s broad definition of a trade secret and accompanying factors relevant in unfair competition determinations (id.), there is a counterbalancing strong presumption of discoverability under FOIL, which necessitates a narrow interpretation of any of the exceptions enumerated under Public Officers Law § 87 (d) (2). (See Matter of Washington Post Co. v New York State Ins. Dept., 61 NY2d 557 [1984]; Matter of Sunset Energy Fleet v New York State Dept. of Envtl. Conservation, 285 AD2d 865 [3d Dept 2001].) For example, in Public Citizen Health Research Group v Food & Drug Admin. (704 F2d 1280, 1288 [DC Cir 1983]), the court, noting the discrepancy between the broad Restatement definition and the purposes of the Freedom of Information Act (FOIA) (the federal version of FOIL), defined “trade secret” for the purpose of a FOIA exemption as “a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort.”
Moreover, “[w]here the agency denies access to a record pursuant to paragraph (d) of subdivision two of section eighty-seven of [FOIL], the agency shall have the burden of proving that the record falls within the provisions of such exception.” (Public Officers Law § 89 [5] [f].) Similarly, “[t]he person requesting an exception from disclosure . . . shall in all proceedings have the burden of proving entitlement to the exception.” (Public Officers Law § 89 [5] [e].) Thus, the oft-stated article 78 “arbitrary and capricious” standard of review is not applicable. Rather, the person resisting disclosure bears the burden of proving entitlement to one of the exceptions. In this case, it is the Department who has the burden. (See Matter of Laureano v Grimes, 179 AD2d 602, 603-604 [1st Dept 1992]; Matter of Bahnken v New York City Fire Dept., 17 AD3d 228 [1st Dept 2005].)
*445 In support of nondisclosure, the Department of Insurance, along with the Insurance Companies, argue that the zip code information qualifies as a trade secret under the Restatement definition and, alternatively, that disclosure would cause substantial competitive injury. By their answer and supporting affidavits, respondents maintain that (1) the Insurance Companies consider the zip code information proprietary, as evidenced by the cover letters accompanying their Regulation 90 submissions (Connally affirmation 11 5); (2) the Insurance Companies do not disclose the Regulation 90 filings to the public (Crisci affirmation 1i 6); (3) the zip code information is more detailed than any publically available information (Donnellan affirmation 11 21); (4) the Insurance Companies store the information in password protected databases that are only available to employees who require the information within the scope of their job functions (Saleh affirmation 11 5); (5) competitors could use the information, at minimal cost, to make highly valuable inferences on the submitting insurer’s profitability and marketing trends in specific regions, allowing them to adjust their own marketing strategies to either avoid or target a particular area (Connally affirmation 111112-16; Webster affirmation HH 4-11); (6) the Insurance Companies consider the information valuable in developing marketing plans and maintaining a competitive advantage over their competitors (Connally affirmation 1ÍH 8-11); and (7) the information is not readily available elsewhere and may only be obtained through costly surveying (interveners’ mem at 6-7).
Petitioner contends that the law of trade secrets is premised on the desirability of encouraging competition. (Restatement [Third] of Unfair Competition § 1, Comment a.) Under this rationale, petitioner urges that the court consider countervailing interests for a free marketplace. In addition, petitioner argues that a mere compilation of sales records do not satisfy any of the factors listed under the Restatement of Torts since they lack information regarding pricing, profits, losses or actual marketing plans. (Hunter affirmation 1i 8.) Without this specific information, petitioner asserts that disclosure of the data sought provides no unfair competitive advantage to any insurer, and that mere speculation or inferences regarding profitability and marketing trends do not satisfy respondents’ burden of establishing “substantial injury.”
The court agrees. In Matter of Sunset Energy Fleet v State Dept. of Envtl. Conservation (285 AD2d at 867), the Court *446 determined that worksheets submitted in accordance with permit requirements, which analyzed pollutants from nearby facilities, were not a trade secret since (1) the compiled information is publicly available; (2) petitioner did not employ unique or proprietary processes in compiling or analyzing the data; and (3) the information could be easily reproduced.
Respondents contend that the type of data sought in Sunset Energy Fleet is distinguishable from the present case in that it did not contain information about its customers that competitors could use to obtain an unfair advantage and, therefore, does not pose the same potential, competitive dangers. Although the source of the zip code information differs from that in Sunset, respondents’ argument that the potential dangers warrant a trade secret exemption is unavailing. Notably, as in Sunset, the information here is data available to the public, that may be obtained by simply surveying the residents of a particular zip code. Moreover, petitioner did not apply any unique or proprietary methods to analyze the data that would necessitate a trade secret exemption. Rather, the zip code information merely consists of a compilation of reports indicating whether policies have been refused, issued, renewed, or cancelled.
Turning to the second prong of Public Officers Law § 87 (2) (d), in order to establish substantial competitive harm, the resisting party must make a showing of “actual competition and the likelihood of substantial competitive injury.” (Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale, 87 NY2d 410, 421 [1995].) In making this determination, the court must consider the commercial value to competitors and the resulting damage to the submitting party. (Id. at 420.)
Respondent and intervenors’ argument that the Insurance Companies will incur substantial injury since competitors may draw inferences on profitability in a particular zip code is speculative and lacks the particularized evidentiary detail necessary to meet their burden warranting nondisclosure. The same inferences could be made by examining the location of an insurer’s agents, which can be found in the yellow pages or on the insurers’ Web site. (See generally <http://www. statefarm.com/jscript/easysrch.htm.>) Furthermore, any insurer may access their competitor’s Regulation 90 submissions, thereby mitigating the degree of injury for any particular insurer and encouraging fair competition.
*447 Conclusion
Regulation 90 plainly requires public disclosure. Here, respondent failed to fulfill its burden of proving that the subject Regulation 90 reports qualify for an exemption under FOIL and, thus, the agency determinations are annulled and disclosure of such reports is required. (See Matter of Laureano v Grimes, 179 AD2d 602 [1st Dept 1992]; Matter of Bahnken v New York City Fire Dept. 17 AD3d 228 [1st Dept 2005].) The agency determinations that such reports can be kept confidential for six years would result in the public not being able to access these records until long after they cease to be relevant to current insurance practices, thereby thwarting the purpose of the regulation “to make . . . private passenger automobile insurance readily available in the voluntary market by prohibiting companies from engaging in redlining practices” (11 NYCRR 218.1).
In its discretion, the court declines to grant attorneys’ fees as petitioner has not made a sufficient showing that fees are warranted, including submission of any time records.
Accordingly, it is hereby ordered and adjudged that the petition is granted to the extent that the Department’s August 9, 2004 and October 18, 2004 determinations denying petitioner’s appeals of the denial of his FOIL requests are annulled; and it is further ordered and adjudged that the Department is directed to comply with petitioner’s outstanding requests within 30 days of service on the Department of a copy of this order and judgment with notice of entry.

 The court notes that by stipulation dated February 23, 2004 petitioner did not oppose the intervention in this proceeding by such insurance companies.